KELLOGG SWITCHBOARD & SUPPLY CO. v. DEAN ELECTRIC CO. et al.

(District Court, N. D. Ohio, E. D. October 6, 1915.)

No. 10.

1. EVIDENCE &#9758;596(1)—MEASURE OF PROOF—EFFECT OF DELAY IN PROSECUTION.

That a case has been permitted to drag without trial for 10 years requires the party asserting rights to establish them by clearer testimony than would be the case if he had diligently pressed his claim to a decision.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2446; Dec. Dig. &#9758;596(1).]

2. PATENTS &#9758;328—VALIDITY AND INFRINGEMENT—TELEPHONE SWITCHBOARD RELAY.

The Manson patent, No. 784,872, for a telephone switchboard relay, claims 1, 2, 3, 5, 6, and 8, *held* void for anticipation in the prior art, and also not infringed, if conceded validity.

In Equity. Suit by the Kellogg Switchboard & Supply Company against the Dean Electric Company and others. On final hearing. Decree for defendants.

Curtis B. Camp and Jones, Addington, Ames & Seibold, all of Chicago, Ill., for plaintiff.

F. O. Richey, of Elyria, Ohio, M. B. & H. H. Johnson, of Cleveland, Ohio, and Charles A. Brown, of Chicago, Ill., for defendants.

CLARKE, District Judge. This is a suit in which the plaintiff claims infringement of United States letters patent No. 784,872, issued on the 14th day of March, 1905, to Ray H. Manson on an application filed on August 3, 1903, for an improvement in a telephone switchboard relay.

The bill was filed in July, 1905. The first testimony was taken in May, 1906, and the last was taken in March, 1915. There were years together in which no action whatever was taken in the case, and it is not surprising, therefore, to find that a record made up in this manner should be so confused and contradictory that it is difficult; if not impossible, for a court to derive from it a result satisfactory even to itself.

[1] The fact that the case has been permitted thus to hang about the courts for 10 years without trial, while witnesses have died and the memories of the living as to important facts have failed, must inevitably require that the party asserting shall establish his rights by clearer testimony than would be the case if he had diligently pressed his claim to a decision. Pending suits, more dead than alive, should not be permitted to extend statutes of limitation. After as well as before suit is instituted, equity aids the vigilant, not those who slumber on their rights.

[2] Relays for various purposes, including that for which the one in suit was devised, were old in the art of telegraphy and telephony before Manson came into the field, and the changes which his patent makes in the constructions which had gone before are so slight that, unless they are of that rare class which, though seemingly slight, by their important results prove their originality and value, they should be looked upon as mere changes of form, suggested by experience, rather than as springing from inventive genius.

That the patent in suit does not cover slight changes which produce great results is for this court conclusively proved by the fact that the plaintiff, though it has owned this Manson patent since the date of its issue in March, 1905, has manufactured and sold as its standard relay for telephone purposes the form which it was using before the date of the Manson patent, known as the Kaisling relay, manufactured under a patent applied for on October 17, 1901, and issued on March 7, 1905—only seven days prior to the date of the issue of the patent in suit.

The changes of construction covered by the claims in issue in this case, viz., claims No. 1, No. 2, No. 3, No. 5, No. 6, and No. 8 of the patent, consist in extending the contact carrying ends of the switch springs forward to near the end of the magnet, and in extending the horizontal arm of the elbow lever rearwardly, so that it will engage the springs which it operates at a point to the rear of the contact points, thus making these points more accessible and easier of inspection than in the older form of construction.

Other claims of the patent, not in issue in this suit, claim invention in a change in the form of the horizontal arm of the elbow lever, which consists in the cutting away of a considerable part of it, leaving only narrow strips or arms near the sides or edges of it. The ends of these rearwardly extending arms are connected by a pin properly insulated and so placed as to engage the spring which it is desired to move. The merits claimed for this construction are two:

First. That the extending forward of the switch springs and the

extending rearwardly of the horizontal arm of the elbow lever gives an unobstructed view of the contact points and easy access to them to an observer placed immediately in front of the instrument. This it is claimed is of value in searching for the cause of defective working when the relays are installed for use in the customary manner, side by side, and very close together. It is claimed that older constructions with the horizontal arm of the armature solid in a measure concealed some of the contact points, if there were more than one, and if the observer stood immediately in front of the instrument.

Second. That it permits placing the vertical elbow of the armature closer to the end of the magnet than in earlier constructions and thus reduces the air space between the magnet and the elbow, thereby increasing the efficiency of the instrument. The evidence in this case shows that the armature is an instrument which rarely gets out of order. Convincing testimony to this effect appears in the advertisement of the plaintiff in Telephony of September 23, 1911, in which it makes a conspicuous feature in its advertisement of the Kaisling relay that no finger marks are to be seen in the dust accumulated upon the operating relay cases of exchanges in which the Kaisling relay is mounted, so seldom do they need inspection and repair.

The claim of superior efficiency made by the plaintiff for the Manson relay, because it permits of bringing the vertical arm of the armature elbow closer to the end of the magnet than other constructions permitted, and so requires lighter current for operation, is stoutly affirmed by the experts for the plaintiff, and just as confidently denied by experts for the defendant. In this state of the record, the fact that the plaintiff has now for ten years continued to manufacture, use, and sell the Kaisling relay, placing upon the market, as the records show, several hundred thousand of them, while all the time owning what it now claims is this superior Manson relay, of which it has manufactured in all those years not to exceed 10,000, and those (a former chief engineer of the company testifies) were manufactured for the purposes of this suit, is evidence clearly sufficient to satisfy this court at least that the claim is not well founded and must be rejected.

That the Manson construction brings the contact points of the relay into a position more readily accessible for inspection and repair than are the contact points of the Kaisling relay would seem to be clear from inspection of the instruments; but here again the conduct of the plaintiff through all these years in not using the Manson relay and in continuing to use the Kaisling is of itself very strong evidence that the claimed advantage of the position of the contact points has been exaggerated, or that the claimed change of position of the contact points is not of any considerable importance in the art, either because inspections of relays are not frequently necessary, or because tests of them are made, not by looking at them, but by electrical tests, such that a view of the contact points is not necessary.

The contribution of the Manson construction to the art at most consisted in lengthening the switch springs in one direction and in ex-

tending the horizontal arm of the elbow lever in the other; and for the purposes of this suit that is all, for there is no claim made in this case that the special form given the horizontal arm of the armature is infringed by the defendant's construction. As we have said, relays in various forms were in use long prior to Manson's claimed invention, and whatever of merit there may have been in carrying the contact points forward, and in moving the point of engagement of the lever with the switch springs backward, seems to have been fully anticipated by the Burns relay, which it is stipulated is a part of the prior art, and by the McBerty patent, No. 592,432, issued on October 26, 1897.

These references seem to make it unnecessary to go into an analysis of the conflicting evidence as to the relative dates of invention of the Manson relay, and of what is known in this record as the American Electric relay, and without doing so we conclude that the construction of the Manson patent was anticipated by Burns and McBerty, and therefore is without novelty and invention, and since the plaintiff has held the patent unused for now 10 years, while manufacturing and selling a type of relay which it is claimed in this suit the Manson is a great improvement upon, we are constrained to conclude that the actions of the plaintiff are to be relied upon rather than its witnesses, and that the construction is wanting in any special utility.

It may be added, we think with entire propriety, that one coming into the field of invention as Manson came into this field, when it had approached, if, indeed, it had not reached, exhaustion, must be confined to the precise construction which he sets forth in his patent, and that for this reason, since the construction of the defendant differs quite as essentially from Manson's as Manson's does from Kaisling's, even if the Manson patent were not void, it must be held that the defendant's construction does not infringe it.

It results that the bill will be dismissed, at the costs of the plaintiff.