12

In re Estate of Frederick L. Chapman, Deceased.
William H. Katt, Administrator of the Estate of Henry
H. Van Meter, Deceased, Claimant, Appellant, v.
The Estate of Frederick L. Chapman, Appellee.

Gen. No. 32,044.

Opinion filed February 23, 1928.

N. M. JONES and W. H. KATT, for appellant.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for appellee; JOSEPH A. STRUETT, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

In October, 1926, Henry H. Van Meter (appellant) filed a claim against the estate of Frederick L. Chapman, deecased, in the probate court, for $5,000, with interest at 5 per cent per annum, from and after June 3, 1898, less a credit by payment on February 25, 1924, of $1,000.

On October 16, 1926, an order was entered by the probate court, allowing the claim of Van Meter against the estate in the sum of $10,680. From that order, Louise S. Chapman, executrix of the estate of Frederick L. Chapman, deceased, appealed to the circuit court. There was a trial *de novo* before the court, without a jury, and on February 11, 1927, on motion of the estate, at the close of the testimony of the claimant, the court found the issues in favor of the estate of Frederick L. Chapman, deceased, and entered judgment that the estate do have and recover from the claimant, Henry H. Van Meter, its costs and charges. From that order this appeal was taken.

On October 27, 1927, Henry H. Van Meter died; and later Wm. H. Katt was appointed administrator of his estate, and substituted here as claimant.

The question in the case arises concerning the following instrument:

"Chicago, June 3d, 1898.

"For Value Received,

I hereby promise to pay to H. H. Van Meter, or order, Five Thousand Dollars—$5,000.00—with interest from date at any time after thirty (30) days written notice upon return of certificate No. 148 of stock of Frederick L. Chapman & Co. made in favor of M. L. Kelly of Rangoon Burma, and held in trust by H. H. Van Meter.

Fredk. L. Chapman."

The instrument contains on the back the following:

"Chicago, June 3rd, 1898.

"Made in Duplicate

Received of Fredk. L. Chapman, Certificate No. 148 of stock in corporation known as Frederick L. Chapman & Co. made out in favor of M. L. Kelly, of Rangoon Burma, for 500 shares at par value of $5,000.00 which I promise to see returned upon payment of Five Thousand Dollars with interest from date.

H. H. Van Meter

February 25, 1924

Paid on the within note $1000.00.

H. H. Van Meter."

The claim of Van Meter is based upon that document. The probate court allowed the claim, but the trial judge, as stated above, ruled it out on the ground that the statute of limitations had run.

It will be observed that the note is dated June 3, 1898, and that the claim was not filed until sometime in October, 1926, that is, after a lapse of more than 27 years.

It is contended on behalf of the claimant, Van Meter, the holder of the note, (1) that the statute of limitations had not run against the note at the time it was filed in the probate court; (2) that the trial judge should have permitted evidence to be introduced that was proffered

by the claimant in regard to the indorsement, "February 25, 1924, Paid on the within note $1,000.00, H. H. Van Meter," which, if admitted, would have shown that the note was not outlawed; and (3) that certain evidence concerning statements made by Chapman in November, 1923, tolled the running of the statute.

On the other hand, it is contended on behalf of the Chapman Estate, (1) that the statute of limitations began to run against the note 30 days after June 3, 1898, or within a reasonable time thereafter, and at the time of the filing of the claim in the probate court (27 years after the date of the note) it was barred by the statute of limitations; (2) that the evidence that was introduced by the claimant was insufficient to avoid the bar of the statute of limitations; (3) that the court correctly excluded the testimony on behalf of the claimant; and (4) that 27 years having elapsed since the execution of the note, a presumption existed, which was not rebutted by the evidence, that it was paid.

The note being dated June 3, 1898, and the claim being made for the first time 27 years afterwards, had the statute of limitations run? According to the terms of the note, the payee, Van Meter, had the right to give the maker, Chapman, written notice and tender the stock, and on failure of Chapman to pay, would have been entitled, 30 days thereafter, to file suit on his claim, but no notice was given on the part of the payee, nor was the stock tendered, and no action whatever was taken until October 16, 1925, twenty-seven years after the note was executed and four months after the maker was dead, at which time the claim was filed against the estate.

In *Shelburne v. Robinson*, 8 Ill. 597, the court said:

"The statute of limitations begins to run when a cause of action accrues. In a case where some act is to be done, or condition precedent to be performed by a party to entitle him to his right to sue, and no definite time is fixed at which the act is to be done or condition

performed, he must exercise reasonable diligence to do the one or perform the other, or he will be barred by the statute of limitations; otherwise it would be in his power to defeat the law by his own negligence and wrong.''

It has been held in many cases that the statute of limitations begins to run either from the time the holder is entitled to make a demand, or within a reasonable time thereafter.

In *Palmer v. Palmer,* 36 Mich. 487, where suit was brought upon a note dated October 16, 1867, and which contained the following language:

''Thirty days after demand, I promise to pay Jonathan Palmer fifteen hundred dollars, value received, without defalcation,'' and where the evidence showed that no demand was made until May 22, 1874, and the period of the statute of limitations was six years, the court said:

''It is now well settled that a note payable on demand is payable at once and without demand, so that the statute runs from its delivery. * * * The payee could have presented it at any time, and it is not the design of the statute to put it in the power of the creditor to postpone its application at his own pleasure. * * * We cannot but think this to be sound doctrine; whatever may have been the ancient prejudice against statutes of limitation they are now regarded as just and entitled to be fairly construed. If a creditor has the means at all times of making his cause of action perfect, it would be unjust and oppressive to hold that he could postpone indefinitely the time for enforcing his claim by failing to present it. He is really and in fact able at any time to bring an action, when he can by his own act fix the time of payment.''

It seems to be the law that the moment a creditor, regardless of the conduct or wishes of the debtor, may legally demand payment, the statute of limitations be-

gins to run; and the reason is that at that moment a cause of action has actually accrued.

In *Knapp v. Greene,* 79 Hun 264, 29 N. Y. Supp. 350, the court said:

" 'It is no stretch of language to hold that a cause of action accrues for the purpose of setting the statute in motion as soon as the creditor, by his own act, and in spite of the debtor, can make the demand payable.' Substantially the same view was taken in *Morrison's, Admr. v. Mullin,* 34 Pa. St. 12; *Rhines v. Evans,* 66 Pa. St. 194; *First Nat. Bank of Garretsville v. Greene,* 64 Iowa 445; *Lower v. Miller,* 66 Iowa 408; *Prescott v. Gosner,* 34 Iowa 175."

In *Roush v. Illinois Oil Co.,* 180 Ill. App. 346, 350, the court said:

"In this and other jurisdictions, however, it is held that where some act is to be done, or condition precedent to be performed to entitle a party to his right to sue, and no definite time is fixed in which the act is to be done, or the condition performed, he must exercise reasonable diligence to do the one or perform the other, or he will be barred by the statute. *Shelburne v. Robinson,* 8 Ill. 597; *Baker v. Brown,* 18 Ill. 91; *Staninger v. Tabor,* 103 Ill. App. 330. In other jurisdictions the same rule prevails. *Twin-Lick Oil Co. v. Marbury,* 91 U. S. 587; *Campbell v. Whoriskey,* 170 Mass. 63." *Luther v. Crawford,* 116 Ill. App. 351; *Knecht v. Boshold,* 138 Ill. App. 430.

From the fact that in the instant case no claim was made until the expiration of 27 years after the note was executed, it follows that whether the rule be considered to be that the statute began to run 30 days after the date of the execution of the note, or began to run only after the expiration of a reasonable time after the right to make a demand had accrued, makes no substantial difference, because it could not be justly claimed that a reasonable time after June 3, 1898, would run beyond ten years, that is 1908, and if the

statute should be considered as beginning to run in 1908, the claim still would be barred, because another ten-year period had elapsed before the claim was presented in the probate court. The case of *Emerson v. North American Transportation & Trading Co.*, 303 Ill. 282, in which a certificate of deposit was considered, is cited in support of the claimant's contention, but the decision in that case was dependent upon the recognition by the court of a substantial difference between a certificate of deposit and a note.

The question remains, was the evidence introduced by the claimant sufficient to toll the running of the statute of limitations?

The evidence of one Olsen, a sales engineer, a close friend of Van Meter, and who knew Chapman in his lifetime, is that in November, 1923, he was present at a meeting between Chapman and Van Meter at Chapman's office; that as they were leaving Chapman's office, Van Meter asked Chapman "if he would be willing to renew the note," and Mr. Chapman replied to that saying that "he would do better than that, after the first of the year"; that he saw the note the first time in the summer of 1893; that he did not know whether Van Meter had the note in his possession when the talk of November, 1923, took place; that about February, 1924, he saw a check for $1,000, signed with the name "Frederick L. Chapman," and which purported to be payable to Van Meter; that he did not know Chapman's handwriting; that (after examining while on the witness stand, the signature on the check) it was his opinion that it was the same as that on the note. Upon motion of counsel for the estate the testimony as to the comparison of signatures was stricken out.

His evidence on cross-examination was that the first time he ever met Chapman was in November, 1923; that he never saw him after that time; that when he went into the office Van Meter and Chapman were talk-

ing about some editorial in one of the issues of Chapman's magazine; that that discussion lasted for about half an hour; that the discussion of the note took place only when Van Meter and Chapman left Chapman's private office and got out into the hall of the building; that Van Meter spoke about the note first; that Van Meter said, "my note," and asked Chapman if he was willing to renew the note; that Chapman replied, "he would do better than that after the first of the year"; that Van Meter then "just nodded," made no reply, and they left; that in that conversation between Chapman and Van Meter they did not describe or mention any particular note; that Van Meter's reference was merely "the note"; that he, the witness, did not see the note at Chapman's place that day; that the only time he ever saw the note was when it was in the possession of Van Meter sometime in the summer of 1923.

Section 16 of chapter 83 on Limitations, Cahill's St. ch. 83, ¶ 17, after certain provisions concerning actions on promissory notes, contains the following: "But if any payment or new promise to pay shall have been made, in writing, on the bond, note　*　*　*, within or after the said period of ten years, then an action may be commenced thereon at any time within ten years after the time of such payment or promise to pay."

With that in mind, the question arises whether Van Meter proved either a new written promise to pay the note, or proved a payment on the note. The following cases hold that the new promise to pay must be in writing: *Robinson v. Briscoe,* 55 Ill. App. 131; *Honn v. Pinnell,* 61 Ill. App. 137; *Harden v. Whitman,* 209 Ill. App. 106; and *Boone v. Colehour,* 165 Ill. 305. In the last case, the court said:

"By the provisions of section 16 of the Limitation Act of 1872, in force at the time of the execution of this note and since, the new promise necessary to remove

the bar of the statute as to written instruments must be in writing.''

Applying that principle to the testimony of Olsen, it follows that the conversation testified to by him was insufficient to remove the bar of the statute of limitations. A number of cases are cited by counsel for the claimant in support of their contention that Olsen's testimony was sufficient to prove a new promise, but an examination of them discloses that they involve either oral contracts or written contracts executed prior to 1872, when no written promise was necessary. In *Horner v. Starkey*, 27 Ill. 13, an oral promise was held to be sufficient, but at that time, the note being dated November 14, 1838, a written promise was not required by the statute; in *Whiteman v. McFarland*, 68 Ill. App. 295, which was a suit for money paid, and where there was no written contract, the court held an oral promise was sufficient; that a written promise to pay the barred debt was necessary only where the original promise was in writing; in *Pinney v. Smith*, 136 Ill. App. 129, which was a suit on an oral contract, the court held that an oral promise was sufficient; in *Quinlan v. Thompson*, 152 Ill. App. 275, which was a suit on an open account, the court held that an oral promise was sufficient.

There is a final contention to the effect that the evidence showed a payment on the note by Chapman to Van Meter sometime in 1924 of $1,000, and that that revived the debt represented by the note. The burden of proof as to such a payment was upon the claimant. We have already recited what Olsen testified to on that subject. The only other evidence introduced to establish payment, outside the memorandum on the note, was the testimony of the two bank officials, Kalabza, bank teller of the State Bank of Chicago, and Park, bookkeeper of the Illinois Merchants Trust Company.

The evidence of Kalabza is that Chapman had an account with the State Bank; that, according to the records of the bank, there were two checks for $1,000 each, charged to his account on February 26, 1924. On cross-examination, he testified that the bank records did not show to whom those checks were payable.

The evidence of Park is that Van Meter had an account with his bank in 1925; that he had a deposit slip showing that on February 25, 1924, Van Meter deposited in the Corn Exchange National Bank $1,025. There is, also, the further evidence of one Thomas, a physician, who testified that he knew Van Meter, but did not know Chapman; that sometime in the last 3 or 4 years, he saw a check in the handwriting of Van Meter, which purported to be signed by Frederick L. Chapman, payable to Van Meter; that the circumstances under which he saw the check were that Van Meter was in his, Thomas,' office, and when he got ready to leave he took it out of his pocket and showed it to him, and told him about it; that he did not know the handwriting of Chapman; that he merely saw the signature on the check, which purported to be that of Chapman.

On the back of the note in question, which was offered in evidence, there was the indorsement above referred to, "February 25, 1924. Paid on the within note $1,000.00, H. H. Van Meter," but it was excluded by the court.

It seems quite obvious that the evidence as to payment was insufficient. *Miller v. Cinnamon,* 168 Ill. 447; *Carroll v. Forsyth,* 69 Ill. 127; *Ruhl v. Gambrill,* 175 Ill. App. 641; *Rothschild v. Sessell,* 103 Ill. App. 274; *Wanamaker & Brown v. Plank,* 117 Ill. App. 327; *Drury v. Henderson,* 36 Ill. App. 521; *Crum v. Higold,* 32 Ill. App. 282.

Analyzing the evidence, in our judgment, it was insufficient; it may give rise to a suspicion, but it fails to convince. That Olsen in 1924 saw a check for

$1,000, with the name Frederick L. Chapman on it, and that Thomas saw a check, payable to Van Meter, which contained as a signature the words, "Frederick L. Chapman"; that Park, the bookkeeper, produced a deposit slip dated February 25, 1924, which showed a deposit to the account of Van Meter for $1,025; that, according to Kalabza, Chapman had an account with the State Bank, and that two checks of $1,000 each were charged to that account on February 26, 1924, all taken together, certainly does not sufficiently prove such a payment on the note, as, according to the authorities, would be sufficient. Of course, the indorsement on the note purporting to be signed by Van Meter was merely, in and of itself, not being in the handwriting of the maker, but being in the handwriting of the payee, self-serving, and was properly excluded by the court. *Connelly v. Pierson,* 9 Ill. 109; *Simmons v. Nelson,* 48 Ill. App. 520; *Lowery v. Gear,* 32 Ill. 383. Then, too, as the claimant, Van Meter, was incompetent to testify, his memorandum on the note was incompetent. *Drury v. Henderson,* 36 Ill. App. 521.

Further, destructive of the claimant's rights, is the evidence that 27 years had elapsed since the execution of the note, so that it is but reasonable to presume that it was paid. *Howe v. Brown,* 287 Ill. 532. In our judgment, the record does not disclose such clear and explicit proof as is necessary to dislodge the presumption of payment which the lapse of 27 years gives rise to.

Being of the opinion that the evidence failed (1) to show a written promise to renew the note; (2) or a payment within the meaning of the statute; (3) or that the presumption of payment after the lapse of 27 years was overcome; (4) or that in any way the note was not barred by the statute of limitations, the judgment will be affirmed.

*Affirmed.*

HOLDOM and WILSON, JJ., concur.