Chapin & Gore, Inc., Appellee, v. Estate of John Powers, Deceased, Appellant.

Gen. No. 36,205.

Opinion filed April 11, 1933. Rehearing denied April 24, 1933.

HUTSON, TRAEGER & BOLGER, for appellant; WILLIS W. HUTSON, of counsel.

Smith & Wallace, Hubert E. Page and R. H. Wehmhoff, for appellee.

Mr. Justice Sullivan delivered the opinion of the court.

Chapin & Gore, Inc., filed its claim October 9, 1930, in the probate court of Cook county against the estate of John Powers, deceased (John Powers died May 19, 1930), based upon the following instruments:

"$1721.30                              Chicago, June 12, 1914
On demand after date we promise to pay to the order of Chapin & Gore Seventeen hundred twenty-one and 30/100 Dollars at our office, #67 East Adams Street. Value received with interest at six per cent per annum.
No..........due..........Sgd.   Walter J. Powers
                                          John Powers."
Indorsed on back, "Paid Nov. 14th, 1920   $103.27."
"$5407.50                              Chicago, June 12, 1914
On demand after date we promise to pay to the order of Chapin & Gore fifty-four hundred seven and 50/100 Dollars at our office #67 E. Adams Street. Value received with interest at six per cent per annum.
No..........due..........Sgd.   Walter J. Powers
                                          John Powers."
Indorsed on back, "Paid Nov. 14th, 1920, $324.45."

The total of this claim at the time of filing, including principal and interest, was $13,544.65. The indorsements on the back of these notes were shown by the evidence to have been made in the handwriting of Mr. Pearson, cashier of the claimant. These amounts are the equivalent of interest for one year on the principal of the respective notes at six per cent.

It will be observed that both notes are dated June 12, 1914, and are payable on demand and that the claim was not filed until October 9, 1930, that is, more than 16 years after the cause of action accrued, about five months after the death of John Powers, and within

about 35 days of the time when it would have been barred even were the statute of limitations tolled by the alleged payment.

After a hearing in the probate court the claim was disallowed, and the claimant appealed to the circuit court of Cook county where a trial *de novo* was had without a jury and the claim was allowed and judgment entered against the estate of John Powers, deceased, for $14,442.58. This appeal followed.

The claimant contends that November 14, 1920, John Powers paid $103.27 on one note, and $324.45 on the other note, and that on that date such payment was indorsed on the back of the respective notes, and that such payment tolled the running of the statute of limitations.

The defendant contends that the notes being payable on demand a cause of action arose at the time they were dated, and that on their face they are barred by the statute of limitations; that to remove the bar the burden was upon claimant to prove by proper evidence that such a payment was made.

No issue is raised on the pleadings or in respect to the consideration or terms of the notes.

The claimant relies on the testimony of the witness Pearson, the entries in the so-called "Bills Receivable Book," and the indorsement of payment on the notes by the witness Pearson to prove that John Powers made such payment November 14, 1920, as would toll the statute.

Objection was made on the trial to the admissibility of the indorsement of payment on the notes by the cashier or agent of the payee on the ground that such indorsements were self serving, and were not binding on John Powers in his lifetime, and were even less binding on his estate after his death.

Objection was urged to the admission in evidence of the entries in the bills receivable book on the ground

that the entries in that book were not original entries in a book kept in the regular course of business of the claimant, and that the entries offered were admittedly copies of other entries that had been previously made and for some reason or other destroyed.

Objection was made to the entire testimony of the witness Pearson, on the ground first, that he was disqualified as a witness under section 2 of the Evidence Act, Cahill's St. ch. 51, ¶ 2, which is as follows:

"No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any idiot, habitual drunkard, lunatic or distracted person, or as the executor, administrator, heir, legatee or devisee of any deceased person . . . unless when called as a witness by such adverse party so suing or defending . . . ," inasmuch as he was a stockholder, director and officer of the claimant corporation; and, second, that once his status as an interested person under the statute had been established, he could not divest himself of his ownership of his stock and relinquish his offices in the corporation in any manner that would render him a competent witness.

The claimant offered evidence to show that Pearson was only a nominal stockholder and that he had no pecuniary interest in the claimant corporation at the time of the trials in the probate or circuit courts, nor at any other time since the one share of stock was issued in his name in 1918, and immediately indorsed by him in blank and turned over to Charles J. Hermann, who was the controlling owner of the stock of Chapin & Gore (hereafter referred to as the claimant).

We will assume for the purpose of considering all of the evidence presented that the trial court ruled prop-

erly on these objections and that whatever force there was to the objection went to the credibility rather than to the competency of the witness Pearson, the indorsements on· the notes and the entries in the bills receivable book.

For a proper understanding and determination of the issues presented in this case it is necessary that we examine the evidence bearing upon the question of the alleged payment carefully and fully.

Louis W. Pearson testified that he was the cashier of the claimant prior to 1914, and continuously from 1914 to the time of the trial in the circuit court; that the claimant kept a book that was called the bills receivable record and that that book contained an account of all notes in the possession of the claimant and the terms of payment of same, and that whenever a payment was made on any of the notes an entry of the payment was made in the bills receivable book; that all of the entries in this book that had to do with the Powers' notes were made in the witness' handwriting; that he made the entries in this book June 12, 1914, evidencing these notes and their terms; that on or about November 14, 1920, he made on the backs of the respective notes· the indorsements appearing thereon; that at the time of the indorsement of November 14, 1920, on the notes and of the entries of the same date in the bills receivable book, the claimant also kept· a cash book and ledger; that all the books and records in which this payment was entered except the bills receivable book were destroyed by the witness five or six years before the trial; that in the regular course of business of the claimant the entries appearing in the bills receivable book were entered in the cash book and the ledger interest account; that Charles J. Hermann, who was the principal stockholder and practically the sole owner of this corporation permanently moved to California in 1920 and has remained there ever since,

leaving the witness Pearson in sole charge of the business for the purpose of liquidating same; that Pearson was 77 years old in December, 1931, and that the claimant ceased doing business right after prohibition went into effect; that Pearson saw John Powers in the office several times, but that he never saw Walter Powers there; that no suit was ever brought on these notes against Walter Powers and that John Powers was not sued on these notes during his lifetime; that for several years prior to the time of filing this claim in the probate court the account against Powers was the only live' account in the bills receivable record; that he did not remember seeing Walter Powers or John Powers or anyone from his office November 14, 1920, which was Sunday, nor did he recall seeing either John or Walter Powers in the claimant's office any time during November, 1920; that they must have sent a messenger or office boy with the money; that, if they did not, he would put no entry on that book without the money; that he knew that the payment was made to him in the claimant's office.

For a clearer conception of the evidence of the witness Pearson as to the payment claimed to have been made by John Powers, or, some one authorized by him to make such payment, and the circumstances under which the payment was made, we repeat that portion of his testimony:

"The Court: I asked you, do you know anything about it? Answer yes or no.

"The Witness: To my best knowledge and belief it was John Powers.

"Mr. Hutson: I object to his belief; he has simply testified from his record, and the witness naturally thinks so.

"The Witness: Yes, I have some recollection as to payment.

"The Court: What is that recollection?

"The Witness: It was paid by someone. I can't say exactly whether John Powers or someone was sent in with it or paid by mail or not. I remember distinctly it surprised me when I received the money—received one year's interest.

"The Court: What was the amount of the money?

"The Witness: Well the interest.

"The Court: In what form?

"The Witness: It may have been checks, currency or mixed together.

"Mr. Hutson: I object to 'it may have been.'

"The Witness: I cannot remember.

"The Court: Wait a minute. That is your full recollection of the matter or do you remember anything else?

"The Witness: I remember it was paid; that is as far as I know; either by John Powers or someone he sent there to pay it. Nobody else I know would pay it.

"The Court: That last statement that nobody else would pay it may be stricken out.

"Q. Do you know whether Walter Powers made a payment?

"A. No, I don't. Walter Powers did not make any payment."

The witness testified that when he was a witness in this case in the probate court he made the following answers to questions that were asked him there:

"Judge Horner asked me: 'Did John Powers pay you that money at that time?' and I answered, 'I have forgotten whether he paid personally or not. I do not know.' Then Judge Horner asked: 'In what way did it come from him?' and I answered, 'I do not know. It could not come from anybody else.' Judge Horner then said: 'Who told you it came from him?' 'A. I do not know of anybody else who would pay it but him.' Mr. Page then asked me: 'How many accounts did you have at that time to look after?' and I answered

'Fully one thousand or more.' Mr. Page then asked: 'Do you remember every incident of payment on those accounts which occurred in 1920?' and I answered 'No, sir. There were so many of them, just like a bank in them days.'

"I was then asked: 'Are you certain the payments were made at that time when you made the entries?' and I answered, 'Yes, sir.'

"I was asked before Judge Horner: 'You do not remember the time of the day you got any payment on that note of November 14, 1920, do you?' and I answered, 'All I can remember is that date, but I could not remember the time.' I was asked the further questions before Judge Horner: 'Q. But do you not remember who told you there had been a payment on account of that note?' And you answered 'A. Nobody told me, the money was paid in.' 'Q. You answered that in that way?' A. 'Yes.' 'Q. And you were questioned:' 'Q. You do not know whether the payment was made by check or not, do you?' 'A. No, check or currency, I do not know which.' 'Q. You do not know whether it was paid in cash?' 'A. Sometimes they were paid in cash.' 'Is that your answer?' A. 'Yes.' 'Q. And you were asked this question (reading):' 'Q. You do not know who brought the payment in?' 'A. I could not remember.' 'Q. You said that?' A. 'Yes.'

'Judge Horner: He has testified that he has no recollection of who made the payments, is that right?' 'A. Yes, sir.'

'Q. Was that your reply?' 'A. Yes, sir. To the best of my knowledge and belief the payment was made by John Powers.' I testified before Judge Horner: 'I could not say exactly whether the payment was all one check or currency and checks mixed.' And Judge Horner said to me. 'Q. Are you able to tell whether payment was made in check or currency?' And did you not answer: 'A. I couldn't tell you that.' "

"The Court: Nothing on the books indicates that. 'A. The books are destroyed that have those entries in.'

"Q. You made that answer, did you? 'A. Yes, sir.'

"The court: (reading) All right.

"Mr. Page: You know of no other record of those transactions now existing? 'A. No, sir.' "

The entries on the pages of the bills receivable book that carried the Powers' account were as follows:

*Left Page*

Chapin & Gore.
Bills Receivable Record.

1918
July 31, Marie Plamondon   Chicago, Ill. Chapin & Gore Cash 6 mos.

1914
June 12, Walter J. Powers   Chicago, Ill. Chapin & Gore Cash Demand

John Powers   Chicago, Ill. Chapin & Gore Cash Demand

*Right Page*

Chapin & Gore
Bills Receivable Record.

1919      (6% int. after maturity)  ⌠Collateral note
          Feb. 4.                   ⎱Diamond ring left
Jan. 31,                            ⌡for security
Notes signed by
Walter J. Powers  6% $5407.50 int paid 11/14/20 on
                  note $324.45
& John Powers     6% $1721.30 int paid 11/14/20 on
                  note $103.27

As to the entries on the bills receivable book Pearson testified as follows:

"Q. You wrote the John Powers item in 1914? A. Yes.

"Q. Long before you wrote the Marie Plamondon account? A. I didn't put that item in there first.

"Q. Did you write the John Powers item or two items before you wrote the Marie Plamondon item? A. That Marie Plamondon item was put in afterwards.

"Q. Afterwards? Why didn't you put in the John Powers 1914 item at the top of the page if it was there first? A. It didn't make any difference, we never followed the pages in rotation or the lines; we put it in anywhere. That is sometimes we might grab it up and put it down anywhere and this came in afterwards.

"Q. Was that your answer? A. Yes.

"(Reading): Q. Do you know why you did not post your first account on the first line if that was the only item appearing on the page? A. We never commenced on the first line every time.

"Q. Did you answer that way? A. Yes.

"Q. You put it anywhere you liked? A. Yes.

"(Reading): Q. You always commenced in the middle and then went back later to finish the first line? A. In this book we could begin anywhere we wanted to.

"Q. You answered that way, did you. A. Yes."

The witness was interrogated further concerning his testimony before Judge Horner and he testified as follows:

"Q. There is an item Marie Plamondon?

"A. Yes, we have different items all the way through.

"Q. And what date did you put down the Marie Plamondon item?

"A. On the date right there.

"Q. Those were your answers and you said that?

"A. Yes.

"(Reading): Q. Well, is that July 31, 1918?

"A. Yes, sir.

"Q. The date appearing on there?

"A. Yes, sir,

"Q. And then you put down the upper account of Marie Plamondon in 1918? Yes, sir.

"Q. Were you asked those questions and did you make those answers?

"A. Yes, sir.

"(Reading): Q. Before you put on the John Powers item in 1914, is that right?

"And your answer was: A. Well, that was put in and this was put in at the time I received these notes. We do not run everything in rotation in the book. We use any line we want to.

"I testified before Judge Horner that I wrote the Powers item in 1914. I now say I transcribed it from some other page and put it in there in 1916; that is that I wrote in 1916 the third line '1914, Walter J. Powers.' The Plamondon item was put on first and the Powers item was transferred from another sheet; that is why it comes on the lower part of the page.

"The Court: Was the Powers item, which is the lower two items, was that put there you say in 1916, or was it put there on the date it bears on that page, 1914?

"The Witness: I think it was put on that page after 1914; I could not say the exact date, it is so far back. The Plamondon 1918 item was written on that page before the 1914 item. The Powers item of 1914 was transferred from another page of the bills receivable record to this page.

"The Court: And that this item on this page of the bills receivable, and dated 1914, is an exact copy of the item that was on the page that is now questioned?

"The Witness: Yes sir.

"The Court: What I want to get at is this, I do not think it shows yet: What is your recollection, if you have any, as definitely as you can recall it to mind, of what year this item, which is dated 1914 on this page, and which is under the 1918 item, what year was the

1914 item actually written in, in ink, on this page: your best recollection?

"The Witness: Well as far as I can recollect it may have been four or five years afterwards.

"The Court: Four or five years after?"

The law is well settled that an indorsement of payment on a note by the payee is inadmissible against a maker for the purpose of avoiding the bar of the statute of limitations, unless such indorsement is corroborated by other evidence of actual payment. It was held in *Connelly v. Pierson,* 9 Ill. 109:

"The indorsement is the *ex parte* act of the payee, and is favorable to his interest; for if sustained, he thereby avoids the defense, and recovers demand, which, without the indorsement would clearly be barred by the lapse of time. The evidence therefore proceeds from an interested source. A rule, that the mere indorsement should authorize the presumption that the payment was actually made, and at the time stated, would be inconvenient in its operation, and mischievous in its tendency. It would furnish the strongest inducements to the payee to fabricate testimony in his favor, which could not without great difficulty, if at all, be explained away by the maker. The payment is an affirmative act, much more easily established by the creditor than disproved by the debtor. In the opinion of the court, an indorsement of a partial payment on a note, made by the holder without the privity of the maker, is not, of itself and uncorroborated, sufficient evidence of payment to repel the defense created by the statute of limitations. It was thus expressly decided in the cases of *Roseboom v. Billington,* 17 Johns. 182, and *Whitney v. Bigelow,* 4 Pick. 110."

In *Katt v. Chapman,* 248 Ill. App. 12, this court held:

"Of course, the indorsement on the note purporting to be signed by Van Meter was merely, in and of itself, not being in the handwriting of the maker, but being in the handwriting of the payee, self-serving, and was

properly excluded by the court. *Connelly v. Pierson,* 9 Ill. 109; *Simmons v. Nelson,* 48 Ill. App. 520; *Lowery v. Gear,* 32 Ill. 383."

An attempt was made to fortify and support the indorsements of payment on the notes by the testimony of Pearson. A careful analysis of his testimony compels us to the conclusion that he had no independent recollection of having actually received the alleged payment from anybody. His bald conclusion that he had an independent recollection viewed in the light of his entire testimony has little if any probative value and we seriously doubt whether it could be considered such corroboration of payment as would make the indorsements admissible under the rule heretofore stated. This court said in *Ruhl v. Gambrill,* 175 Ill. App. 641, 643:

"Appellant's testimony is to the effect that appellee made the four payments on the note at the times stated in the respective endorsements, but his testimony was given without entering into details as to the several transactions and in such a way as to involve statements of conclusions rather than a narrative of facts involved in the supposed payments as they occurred. . . .

"Considering all the evidence offered on the trial, we are of the opinion that plaintiff failed to prove by a preponderance of the evidence, the affirmative issue made by him that appellee made the payments on the promissory note under such circumstances as to give rise to the implication of a new promise on the part of appellee to pay the balance of the note. The theory upon which part payment of a debt takes a case out of the statute is that the party making the payment intended by it to acknowledge and admit the greater debt to be due. If, therefore, it was not in the mind of the debtor to do this then the operation of the statute will not be affected by the payment.

"Payment of a part is not enough unless it is made under such circumstances that a promise to pay the

remainder may be reasonably inferred from it. *Tippets v. Heane,* 1 Cromp. M. & R. 252; *Wainman v. Kynman,* 1 Exchqr. 118; *Lowery v. Gear,* 32 Ill. 383; *Kallenbach v. Dickinson,* 100 Ill. 427; *Miller v. Cinnamon,* 168 Ill. 447; *Brown v. Lathman,* 58 N. H. 30.''

Other than the indorsement on the notes and the entries in the bills receivable book the only evidence in this record presented by the claimant on the question of payment was the testimony of the witness Pearson. A thorough examination of this witness' testimony fails to reveal anything that could be construed as showing or even tending to show that John Powers personally made any such payment.

Failing to show that John Powers personally made the payment a feeble effort was made to show that some one else acting for and on behalf of John Powers made the payment. Instead of assuming its burden, and proving, as the law holds the claimant must prove, that some representative or agent acting for John Powers and with authority so to act made the payment in such manner and under such circumstances as to give rise to the implication of a new promise to pay the amount specified in the notes, Pearson testified that if John Powers did not make the payment in person it must have come in the mail or that some messenger of his must have brought it in. The claimant's testimony was vague, confusing and indefinite. Nowhere in Pearson's entire testimony is there the slightest indication as to who actually made the payment if any such payment was made. There is not a scintilla of evidence that any person with authority to act made the alleged payment for and in behalf of John Powers. The vague, indefinite conclusions of the witness certainly cannot supply the want of the clear, positive and convincing evidence required by law to revive this claim.

The indorsement of payment by the holder of the notes, otherwise inadmissible, was unquestionably ad-

mitted in this case on the theory that Pearson's testimony furnished corroborative evidence of actual payment. An examination of his evidence demonstrates that it did not, in fact, furnish any legal evidence of payment by John Powers, notwithstanding the witness' assertion that he did have an independent recollection of payment. In the absence of facts showing who made the payment and the circumstances under which the payment was made, we must infer that the basis of the witness' testimony was the indorsements themselves and the entries in the bills receivable book rather than any independent recollection of his.

This is not the kind of clear, convincing evidence that the law insists must be presented corroborating an indorsement of payment on a note by a payee without the privity of the maker to render such indorsement either admissible or credible. It lends no more credence to the indorsement than the indorsement would have had without it. Instead of supporting this claim by the satisfactory evidence necessary to toll the running of the statute of limitations and to prevail against the estate of the decedent, whose lips have been sealed by death, the claimant places his reliance on evidence all of which was of doubtful value. The testimony of Pearson was wholly inadequate. The indorsements were of no avail without sustaining support from Pearson's evidence showing payment as contemplated under the law. The entries in the bills receivable book are discredited by Pearson himself as will be shown later. These three species of evidence were offered no doubt with the idea that each, though weak and unavailing in and of itself, would lend some force to the other and thus make each other competent and believable.

As to the entries in the bills receivable book it will be observed that the Plamondon entry, although under date of July 31, 1918, is at the top of the page, while the Powers account of June 14, 1914, is entered

lower down on the same page. Pearson testified positively, both in the probate and circuit courts, that the entry of the Powers account as shown by the bills receivable book was the original entry and that it was made on the date it bore, and that on the date of the entry there was no other entry on that page and that four years later the 1918 Plamondon account was entered above it on the same page. Realizing the inconsistency of this, he later gave several different and conflicting versions of this entry. He also testified later that this entry was not the original entry, but was a copy or transfer of the original entry; that the original entry had been destroyed and that the transfer was made in 1916, 1918 or 1919.

We have examined every entry in the bills receivable book, which the witness testified was in his handwriting, and we are convinced that the witness did not tell the truth, or that he was woefully mistaken as to the Powers entry. Without the aid of the handwriting expert, who was called by the defendant, it is readily discernible with the naked eye that every entry made in this book in Pearson's handwriting, even as late as the Everett account in 1924, was written in a clear, firm and flowing hand, except the Powers entry in 1914. The book showed no entries in his handwriting between 1924 and 1927, and the entry of payment on the Beech account made October 5, 1927, was the only specimen of Pearson's handwriting in the book that compared at all with the Powers 1914 entry, which he testified to having made in either 1914, 1916, 1918 or 1919. This Powers entry of 1914, and the notation of payment of November 14, 1920, showed unmistakable signs of having been made at a date much later than that testified to by the witness. His handwriting as evidenced by this book was strong, firm and flowing as late as 1924, and the only entries in the book which showed marked signs of deterioration in his hand-

writing were the 1914 Powers entries, the November, 1920, notation of payment, and the 1927 Beech entry. Notwithstanding the fact that the trial court was impressed with the apparent sincerity and honesty of this witness, it is our opinion that this Powers account with its notation of payment as it now appears in this bills receivable book was entered at a much later date than the claimant would have us believe, and that it was valueless as far as affording any substantiation to this claim.

Walter Powers, the other maker of the note, was called as a witness by the claimant and testified that he had no independent recollection of making the alleged payment, but that the obligation was primarily his and that if any payment was made he must have made it. The trial court concluded that if Walter Powers had made the payment he would have remembered it, and that not remembering it he did not make it.

The trial court in its oral decision of this case, after stating that the court was convinced that Pearson told the truth and that payment was in fact made, said:

"If Walter Powers did not make those payments, then John Powers, it is presumed, did so. . . . Before Walter Powers testified, I was inclined to think that the evidence did not quite sufficiently show that the payments were made by John Powers. It is true that the testimony of Mr. Pearson on that subject is a little vague and confusing and yet it does tend to show or by innuendo, at least, that the money came from John Powers."

We are of the opinion that the trial court erred in indulging in this presumption in the absence of competent, credible and convincing evidence of facts showing that the payment was actually made. We are convinced that under our law this kind of presumption cannot be indulged as a substitute for the satisfactory

and convincing evidence necessary to toll the statute and prevail against the estate of the decedent, especially when the claim is more than sixteen years old and no effort has been made to enforce it against either of the makers during that time.

None of the cases cited by the claimant to uphold the presumption invoked by the circuit court is analogous to the case at bar. If the partial payment invoked to revive the claim is properly proven, admitted or not denied, then of course the court is warranted in presuming, in the absence of other evidence overcoming the presumption, that there was an affirmative intention to pay based on the actual fact of payment by the maker of the notes. We can, however, discover no case that holds, where the evidence consists mainly of conclusions and merely gives rise to the conjecture and suspicion that somebody (unknown as far as the evidence goes) made or might have made such a payment as would toll the statute, even where the evidence shows that the co-maker did not make the payment, that such evidence is sufficient foundation in law for the presumption that, because somebody made the payment or might have made it, then the decedent maker of the note must have made it. The general ruling is that a fact cannot be regarded as proven where the evidence merely gives rise to the conjecture or suspicion of its existence. (17 Cyc. 754.)

The presumption of the court was not based on evidential facts, but had as its premise what was nothing more than Pearson's presumption that payment was made by John Powers.

The notes in question in this case were on their face barred by the statute, and in order to revive this claim the burden was on the claimant to show by clear, positive and convincing evidence that the alleged payment was made by John Powers, November 14, 1920, to toll the running of the statute of limitations for 10

years from the date of payment. In *Wachter v. Albee,* 80 Ill. 47, 51, it is said:

"When, however, a party permits a debt to run, making no effort to collect it until the Statute of Limitations can be pleaded in bar of the action, he is in no position to call upon a court to aid him upon slight proof; on the contrary, the evidence ought to be clear and satisfactory to overcome the bar of the statute."

The following language by this court in *Katt v. Chapman, supra,* is equally applicable to the facts in this case:

"Analyzing the evidence, in our judgment, it was insufficient; it may give rise to a suspicion, but it fails to convince."

Walter Powers also testified that John Powers had been interested financially with Charles J. Hermann in various projects over a period of years, that they were intimate friends, and that John Powers had told the witness during his lifetime that these notes had been taken care of and settled in 1923. The evidence discloses that John Powers, at least since 1920, and Walter Powers, since 1918, were abundantly able to pay these notes and a claimant cannot permit a note to remain unpaid until the maker dies or the statute can be pleaded in bar and expect the court to look upon his claim with favor. *Fleming v. Mills,* 182 Ill. 464:

"Stale claims against deceased estates are looked upon with suspicion and disfavor."

*Kellogg Switchboard & Supply Co. v. Dean Electric Co.,* 231 Fed. 194:

"The fact that the case has been permitted thus to hang about the courts for 10 years without trial, while witnesses have died and the memories of the living as to important facts have failed, must inevitably require that the party asserting shall establish his rights by clearer testimony than would be the case if he had diligently pressed his claim to a decision."

In discussing statutory limitation in *Phoebe v. Jay,* 1 Ill. 268, the court said (p. 273):

"The statute of limitations was made for the purpose of quieting parties after so much time had elapsed, as affords a presumption that the evidence might be lost by death or forgetfulness. . . . The law, thereunder, discourages lawsuits after so much time has intervened as to create the presumption that witnesses have died or forgotten the transactions; or, in other words, the law favors the diligent and not the slothful."

It is a peculiar and suspicious circumstance that, when the notes were six years past due and more than six years' interest was past due, John Powers would pay and the claimant would be willing to accept payment for one year's interest only when Powers was well able to pay the notes in full.

The record in this case is lacking in the explicit proof necessary on the part of the claimant to maintain its burden, and when for 16 years this claimant failed to assert its claim when memories were fresh, before its books had been destroyed and while John Powers was still alive, the law will presume that John Powers paid the notes but neglected to have them canceled and destroyed.

In an opinion of this court in *Katt v. Chapman, supra,* the same learned judge who tried this case used the following language:

"Further, destructive of the claimant's rights, is the evidence that 27 years had elapsed since the execution of the note, so that it is but reasonable to presume that it was paid. *Howe v. Brown,* 287 Ill. 532. In our judgment, the record does not disclose such clear and explicit proof as is necessary to dislodge the presumption of payment which the lapse of 27 years gives rise to."

This record failed to disclose the convincing evidence of payment necessary to toll the running of the statute of limitations and it is our opinion that the claim on the notes was barred by the statute.

Some other legal questions have been presented, but inasmuch as they have only to do with the admissibility of evidence and the action of the trial court on certain propositions of law and they would not affect the result, we do not consider it necessary to discuss them.

For the reasons stated herein we are of the opinion that the facts as they appear in the record did not authorize the finding and judgment of the circuit court and the judgment of the circuit court is reversed with a finding of facts and judgment will be entered here for the estate for costs.

*Judgment reversed with a finding of facts and judgment here for the estate of John Powers for costs.*

Finding of fact: We find as ultimate facts that neither the deceased, John Powers, nor any representative nor agent of said Powers, made any payment of principal or interest on either of the two notes sued upon after the making of the said notes; and we further find that the estate of John Powers, deceased, is not indebted to Chapin & Gore, claimant, in the amount of the claim nor any part of it.

SCANLAN, P. J., and GRIDLEY, J., concur.