McCoy *v.* Morrow.

ALEXANDER McCOY, Appellant, *v.* ELEANOR MORROW, Appellee.

APPEAL FROM PEORIA.

A creditor will be considered to have waved his lien upon the property of an intestate, if he does not pursue his remedy in a reasonable time. If prosecuted in a reasonable time the lien will be good against purchasers from heirs or devisees.

Although there is not an express statute of limitations within which such a lien may be enforced, it would seem by analogy to the lien of judgments, and the limitations for entry upon and recovery of lands, that seven years from the death of an intestate should bar such liens.

The law will not favor liens upon lands, of which the public records do not furnish notice.

In support of rights claimed and enjoyed without interruption for twenty years, the law will presume all debts and demands to have been satisfied.

It is the duty of administrators to interpose the presumptions and positive limitations of law against claims presented for allowance; but their omission to do so will not entirely preclude others affected by the neglect from all protection.

The judgment of a court having jurisdiction, allowing claims, is conclusive when brought in question collaterally; but this rule has no application to the lien set up against property in other hands, out of which satisfaction is sought.

It is the policy of the law to give security to titles, and it will not allow the revival of dormant demands to jeopardize long established rights.

THIS suit was brought by the plaintiff to recover the possession of the undivided half of the south-east quarter of section number twenty, in township number eleven, north of the base line of range number seven east of the fourth principal meridian, in Peoria county.

It was agreed between the parties to this suit that the said plaintiff claims title to the undivided half of said land, under the following described chain of title, viz.:

Patent from the United States to Allen Sterdevant, dated December 15th, 1817.

A deed from Allen Sterdevant to Ebenezer T. Warren, dated August 11th, 1818, which deed was duly recorded in the state recorder's office, soon after its execution.

That said Ebenezer T. Warren departed this life on or about the 10th day of August, 1830, in the county of Adams, in the State of Illinois. That said Ebenezer T. Warren left, as his sole heirs, him surviving, John Warren and Ann W. Warren, since intermarried with William M. Vaughn, they being his only children and heirs.

A deed from Ann W. Vaughn and William M. Vaughn to Henry Warren, bearing date May 1st, 1849, conveying by quit claim " all the right, title and interest which we may have (the said Ann W. Vaughn and William M. Vaughn) in any way in any lands that were formerly owned by said Ebenezer T. Warren, or in which said Warren had any title or interest, in the counties of Peoria, Warren, Knox, Fulton, Mercer, Adams, McDonough, Schuyler, Pike, Calhoun and Putnam,

or in any other lands in the Military Tract, in the State of Illinois," which deed was recorded in the recorder's office of Peoria county, on the 29th day of March, 1855.

That said Henry Warren, by deed bearing date June 10th, 1854, conveyed to Alexander McCoy, the plaintiff, all his right, title and interest to the S. E. 20, T. 11 N., 7 E., being the land in controversy, which deed has never been recorded.

That the declaration in this suit was served on the defendant on the 23d day of November, 1855, and filed in court December 11th, 1855, at the November term of the Peoria County Circuit Court, 1855; and that defendant was in possession of the premises at the time the declaration was served.

It was further agreed between the parties to this suit, that the defendant claims title to said tract of land, as follows, to wit:

That said Ebenezer T. Warren died intestate, on or about the 10th day of August. A. D. 1830, in the county of Adams, State of Illinois.

That letters of administration on the estate of said Ebenezer T. Warren, deceased, were duly granted to Willard Keys, by the probate judge of Adams county, Illinois, on the 28th day of October, 1830.

That an inventory and appraiser's bill of the personal property and effects of the said Ebenezer T. Warren was duly made and filed in the probate court of Adams county, aforesaid, by said administrator, in due time, and according to law.

That a sale bill of the personal property and effects of the said Ebenezer T. Warren, deceased, was duly filed by the said administrator, in said probate court.

That a final settlement of said estate was made by the said administrator, on the 5th day of December, 1837, so far as the effects had been inventoried and claims had been filed and allowed against said estate.

That no inventory of any real estate owned by said Ebenezer T. Warren, at the time of his decease, had been made and filed in the court of probate at any time prior to the final settlement of said administrator, as mentioned in number five of this agreement, as above stated.

That on the 29th day of August, A. D. 1855, the said Willard Keys, administrator of said estate of Ebenezer T. Warren, deceased, filed in the county court of Adams county, Illinois, an inventory of the real estate belonging to the estate of said Ebenezer T. Warren, deceased, in which inventory is the said S. E. 20, T. 11 N., 4 E., the land in controversy.

That at the August term of the county court of Adams county, 1855, there was a claim duly filed, proved, and allowed in said court, in favor of John Ware, for the use of William

C. Goudy, against the estate of Ebenezer T. Warren, deceased, for the sum of eight thousand eight hundred and thirty-eight dollars. And also, at the same term of court, another claim was proved and allowed against said estate, in favor of the Kennebeck bank, for the use of William C. Goudy, for the sum of ten thousand one hundred and forty-five dollars, making in all the sum of eighteen thousand nine hundred and eighty-three dollars.

That at a term of the county court of Adams county, Illinois, held on Monday, the 7th day of January, 1856, pursuant to law, the said Willard Keys, administrator of said Ebenezer Warren, deceased, presented his petition for authority to sell the real estate of which the said Ebenezer T. Warren died seized, to pay the debts of said deceased, which petition was against John Warren, Ann W. Vaughn, and William M. Vaughn, sole heirs at law of said Ebenezer T. Warren, deceased.

That at the said January term of said county court of Adams county, held on the 7th day of said month, 1856, on the presentation of said petition, and the said defendants, and all other persons interested, being duly notified according to law, by publication in the Quincy Herald, a newspaper published in the city of Quincy, in the county of Adams, and State of Illinois, for three weeks successively, commencing at least six weeks before the presentation of said petition, of the intention of said administrator of presenting the same to said court for the sale of the whole or so much of the real estate of which said Ebenezer T. Warren died seized, as will be sufficient to pay the debts of said deceased, and requiring all persons interested in the real estate of said deceased to show cause why the real estate should not be sold for the purpose of paying the debts of said deceased, in pursuance of the statute in such case made and provided. The said court rendered a decree for the sale of the real estate of which the said Ebenezer T. Warren died seized, and as mentioned and described in said petition (in which petition was mentioned and described the said S. E. 20, T. 11 N., 7 E.), or so much thereof as may be necessary to pay the debts of said deceased.

That said Willard Keys, administrator as aforesaid, in pursuance of said decree, proceeded to sell said tract of land, having given the notice required by law, and at the place mentioned in said decree, did, on the 16th day of April, 1856, at the door of the court house in the city of Peoria, expose at public vendue, the said S. E. 20, T. 11 N., 7 E., between the hours of ten o'clock A. M., and two o'clock P. M. of said day, in pursuance of the terms of said decree, and struck off and sold said tract of land to Eleanor Morrow, said defendant in

this suit, for the sum of two hundred and ninety-eight dollars, she being the highest and best bidder therefor. That said McCoy was present at the sale, and gave notice to all bidders at the sale that he claimed title to the one-half of said land under conveyances from said Vaughn and wife.

That said Willard Keys, administrator as aforesaid, in pursuance of said sale so made by him on the said 16th day of April, 1856, did make, execute and deliver to said Eleanor Morrow, a deed for the above described premises, which deed recites at large the said decree so rendered as aforesaid.

The case was submitted to the court without the intervention of a jury, and the court found the issue for the plaintiff.

The defendant moved for a new trial, which motion was overruled, and the court rendered judgment in favor of the plaintiff, and against the said defendant, to which decision of the court the defendant excepted and appealed to the supreme court.

The appellant assigns for error, that the court, on the facts in evidence, should have rendered judgment in favor of the defendant, and against the plaintiff.

POWELL and HOPKINS, for Appellant.

GROVES and McCOY, for Appellee.

SKINNER, J. This was an action of ejectment, in which the plaintiff below claimed the undivided half of S. E. 20, 11 N., 7 E., in Peoria county.

The cause was tried upon an agreed state of facts, without the intervention of a jury, and the plaintiff recovered the interest in the land claimed. The facts agreed are, that Ebenezer T. Warren, in 1830, died seized *in fee*, of the quarter section of land, leaving John and Ann Warren his sole heirs; that Ann, in 1849, conveyed her interest therein to Henry Warren, which conveyance was recorded in Peoria county, in March, 1855; that Henry Warren, in 1854, conveyed his interest in the land to the plaintiff below; that in 1830 letters of administration on the estate of Ebenezer T. Warren were duly granted in this state to Willard Keys; that final settlement of said estate, so far as inventoried, was made in 1837; that in August, 1855, said Keys filed in the court where administration was granted, an inventory of real estate, of which the said intestate died seized, lying in this state, among which was this tract of land, no previous inventory of real estate having been filed; that at the time last named claims were filed and allowed against said estate, amounting to over $18,000; that in January, 1856, said Keys, upon due notice and application, obtained from the court where

administration was granted, an order for the sale of this land, among other lands, for the payment of debts; and that after due notice, and in pursuance of said order, Keys, in April, 1856, sold and conveyed, as such administrator, the tract of land to the defendant below.

Unless the proceedings of administration, and the conveyance thereunder to the defendant defeated the title of the plaintiff, the judgment below must be affirmed.

Creditors have a lien, in this state, against the estate of their deceased debtors, for satisfaction of their debts, and which they may enforce, through administration, even against purchasers from heirs or devisees. *Vansyckle* v. *Richardson*, 13 Ill. R. 171. And there is no statute interposing any limitation of time within which the lien must be enforced. The questions then are, will delay and *laches* of the creditor destroy his lien and right to pursue the land of which his debtor died seized, in the hands of the grantee of the heir holding under conveyance duly recorded; and, if so, in what period of time?

The motion that this lien is perpetual, and may be enforced at any time against land, after alienation by the heir, is wholly inadmissible. Such a rule would render titles to land insecure to a vast extent; and no man who holds lands derived through heirs or devisees, after having exhausted all the means the law affords for the ascertainment of the validity of his title, and the existence of liens and incumbrances against the lands, could be reasonably certain that he would not, after the lapse of years, be stripped of his title through such a secret lien, without actual notice or means of defense. At any period his lands might be demanded and finally wrested from him or his heirs, by force of a conveyance under judicial order and sale, obtained without notice, in fact, and founded on an apparent debt against some unknown person, for years in the grave, through whom his title had passed, and which debt had been hunted or trumped up for that special purpose. What is here supposed is not intended as a censure of anything appearing in this case, but it is justified by facts well understood in some portions of the state. Men's rights of property cannot be thus preyed upon, in a country where the law is founded on principles of justice, and rationally administered.

There are few greater public misfortunes than insecurity of titles to landed property. It paralyzes industry and destroys that incentive to labor and enterprise, which a reasonable certainty of just reward alone will create, and upon which depends the public and private prosperity.

The policy of our law is to afford notice through public offices and records, of liens against lands, and the law will not

favor liens of which it has provided no public notice. Nor does the law favor stale demands and rights slept on, until other rights and interests have arisen and become involved, which, from lapse of time and consequent difficulty of proof, may be jeopardized by the setting up and sustaining of the former.

It is also a rule, both at law and in equity, that where one of several persons must suffer, the loss shall fall on him to whose fault it is attributable.

And in support of possessions and rights long claimed, and enjoyed without interruption, the law will presume grants, or satisfaction of demands. After the lapse of twenty years, debts of whatever degree are presumed to have been satisfied, and this presumption will defeat a recovery on them, unless rebutted by proof. By our limitation statute, actions for debts, generally, are barred in sixteen years, and in some cases in a much less period, after cause of action accrued.

Entry upon, and action for the recovery of land adversely possessed under claim of right, for twenty years, are barred by our law. Seven years, also, bars entry and action where the land is adversely possessed during that period, under certain circumstances. The lien of judgments against lands ceases after the lapse of seven years from their rendition.

In short, the policy of our law is repose and security of titles and estates, against dormant claims.

It is true that it is the duty of administrators to interpose the presumptions and positive limitations of the law against claims presented for allowance, and coming within their purview; and that the judgment of a court having jurisdiction to adjudicate, allowing claims against an estate, is conclusive, where brought in question in a mere collateral proceeding; but these rules have nothing to do with the *lien* of the claim or debt on the property out of which satisfaction is sought.

In this case some twenty-five years had elapsed after the death of the debtor, before filing the claims for allowance, and some eighteen after final settlement of administration had elapsed before the filing of the claims, and the revival of administration for the purpose of proceeding against lands for their satisfaction; and in the meantime, and nineteen years after the death of the debtor, the heir conveyed the land, and the purchaser holds under the heir by deed duly recorded, before any step had been taken by the creditors to enforce their claims.

The creditor, under our law, has ample means of, without delay, compelling administration, and, through administration, subjecting the debtor's estate, real and personal, to the payment of the debts against the estate. If he fails to do so

within a reasonable time, he will be held to have waived his lien against property descended, and the grantee of the heir will take the title, discharged of the lien. It is not necessary in this case to decide what shall be a reasonable period of time for that purpose; for here the delay is so great as to leave no room, either from adjudged cases, or the analogies of our law, for question. It seems to me that that certainty in the law so necessary to enable the citizen to know his rights of property — by analogy to the lien of judgments and the limitations of entry upon and action for the recovery of lands — requires the application to this case of the fixed period of seven years from the death of the ancestor. The court, however, waiving this point, hold upon this record that the purchaser from the heir took the title, discharged of all lien on account of the debts of the ancestor.

The view we take is sanctioned in the following cases: *Gore* v. *Brazier*, 3 Mass. R. 523, 542; *Wyman* v. *Brigden*, 4 ibid. 150, 155; *Sumner* v. *Child*, 2 Conn. R. 607; *Ricard* v. *Williams*, 7 Cranch's R. 59; *Vansyckle* v. *Richardson*, 13 Ill. R. 171, 173.

*Judgment affirmed.*