ALEXANDER ROSS *et al.*

*v.*

WALLACE G. CLARK *et al.*

*Opinion filed February 21, 1907.*

1. PLEADING—*demurrer does not admit conclusions of law.* A demurrer to a bill admits only the facts well pleaded and does not admit conclusions of law stated in the bill.

2. SAME—*what are conclusions of law.* Allegations in a bill to enforce a vendor's lien, to the effect that certain unpaid rents, damages for decorating, heating and the like were part of the purchase money, are legal conclusions.

3. VENDORS' LIENS—*vendor's lien is viewed with disfavor.* A vendor's lien is viewed with disfavor and will not be enforced unless clearly established, nor will it be extended beyond the requirements of the settled principles of equity.

4. SAME—*vendor's lien does not cover uncertain demands.* A vendor's lien is only permitted as security for unpaid purchase money, which must be a certain, ascertained amount, and does not extend to contingent, uncertain or unliquidated demands, such as damages on account of unpaid rent or for heating and decorating.

5. SAME—*rule as to substituting articles of personal property for cash.* While specific articles of personal property may be substituted for cash as a part of the purchase money, yet if they are not delivered they must, in the contract, have an agreed pecuniary value in order to have a vendor's lien for their value.

6. SAME—*taking other security is a waiver of a vendor's lien.* Taking a distinct and independent security for purchase money is a waiver of the right to a vendor's lien, as is any other act manifesting the vendor's intention not to rely upon such lien.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is an appeal from a judgment of the Appellate Court affirming the decree of the circuit court of Cook county sustaining appellees' demurrer to appellants' bill for a vendor's lien, and other relief, and dismissing said bill for want of equity.

The bill represents that Alexander Ross and William R. Plumb entered into a contract with Wallace G. Clark and J. Milton Trainer whereby Ross and Plumb were to exchange lots 53 to 74, inclusive, of a certain subdivision in Chicago, for three flat or apartment buildings in that city; that Clark and Trainer agreed to pay, as a part of the consideration money for said lots, all rents of flats in said buildings that were then vacant, at designated prices, for one year after the delivery of the deeds, said payments, however, for any given flat to cease whenever a responsible tenant for that flat for not less than one year should be secured; that appellees executed a lease to one Stephens, who was a person of no means and irresponsible, of said second-story corner flat at $70 per month, payable monthly in advance, from the first of October, 1903, to the 30th day of April, 1905; that on or about the 10th day of June, 1904, said Stephens quit said premises; that a judgment was obtained on said lease in the circuit court of Cook county on the 4th of August, 1904, in behalf of orators for the period up to the bringing of said suit, for $296.32 and costs, including attorneys' fees; that execution was issued and returned *nulla bona;* that a creditor's bill was filed in said court on said judgment, and a hearing had and decree rendered; that said Stephens was

insolvent and unable to pay anything on said judgment; that he was insolvent at the time said lease was made; that since bringing said suit, and within the year from the execution and delivery of said deeds, the further sum of $70 has accrued to orators under said first named agreement for said apartment, it having remained vacant during the whole remaining period of said year, and there is now due, by reason of the premises, $400, "part and parcel of the purchase money of said lots." The bill further alleges that after the exchange of deeds, and without any lease that orators ever saw, appellees placed a tenant in another of said vacant flats and received rent therefor,—how much orators are unadvised,—but orators say Clark and Trainer owe orators, on account of said flat so rented and by reason of said agreement, the further sum of $100 collected and the difference between what the flat was subsequently rented for and the scheduled rate for one year from said letting, amounting to $100, "part and parcel of the purchase money." It is further alleged that by reason of their use of the flat, as last aforesaid, without making a lease for a period of one year, and turning the same over to orators, the premises were damaged to the extent of requiring new decorations, which cost $50, and orators were put to the further expense of $50 to heat the same, which in equity and good conscience should be refunded by said defendants; that appellees failed and neglected to place suitable vases at the entrance of said flat-buildings; that said buildings were represented to be worth $85,000, inclusive of the land, and suitable vases therefor could not be purchased for less than $150, "part and parcel of the purchase price;" that appellees represented that they had already ordered settees for all three entrances to said flat-buildings but the same had not been delivered; that said settees would cost $150; that said apartment buildings were fraudulently represented by Clark and Trainer to be well rented, except the vacant flats, to responsible tenants, but that some of the tenants were irresponsible and left before

the expiration of their leases, to the damage of complainants of $2000; that to induce appellants to make the agreements and deeds, appellees fraudulently represented that all of the outstanding leases were *bona fide;* that in many cases from one to three or more months' rent had been given to the tenants to execute the same; that orators had been unable to obtain new leases from these tenants at the expiration of the others without submitting to a corresponding reduction; that the said premises were purchased largely on account of the representations as to income, to the damage of appellants of $20,000; that said Clark and Trainer have since given a warranty deed to a part of the lots to a brother of said Clark, but the same was without consideration; that various trust deeds have been given on the lots, but orators do not know whether or not they are *bona fide* transactions. Orators pray that the court may ascertain the amount of the unpaid purchase money, and that a vendor's lien may be declared upon said lots in their favor and the court decree a sale to make such sum, and that the court ascertain the *bona fides* of the trust deeds, and grant such other and further relief as the nature of the case may require.

The substance of the bill is set out more fully in the statement of the case by the Appellate Court, but we deem that we have here given enough to show the character and basis of the claim for a vendor's lien.

WILLIAM P. BLACK, for appellants.

TENNEY, COFFEEN, HARDING & WILKERSON, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The aid of equity is invoked by this bill to enforce the claim under a vendor's lien alleged to have arisen from a failure to carry out the contract under which the exchange of property was made, and also for alleged fraudulent misrepresentations inducing the exchange of real estate. Ap-

pellants insist that if any of their allegations are sufficient to entitle them to a vendor's lien, thereupon equity, having thus taken jurisdiction of the cause for the purpose of enforcing those items, will, in order to do justice between the parties, take jurisdiction of all matters germane to the transaction, even though such matters, standing alone, might not be such as could be enforced under a vendor's lien.

The facts averred in the bill must in themselves state a good cause of action. "The demurrer only admits that which is well stated or pleaded." (*Stow* v. *Russell,* 36 Ill. 18.) The allegations of the bill, as set forth heretofore in the statement, with reference to the lease that was executed to Stephens, do not clearly show that the responsibility for the $400, or thereabouts, alleged to be due as a part of the purchase money on account of this lease, rests upon appellees. So far as the pleadings show, Stephens may have been accepted as a responsible tenant by appellants after the exchange of the deeds in August, 1903. The representation that appellees are responsible for the $400 rent alleged to be due here, *as a part of the purchase money,* is purely a legal conclusion, the sufficiency of which the demurrer does not admit. The allegations that certain other rents due were part and parcel of the purchase money, and that the damage for decorations and for renting a certain flat, and for heating the same, would amount to $100, and that suitable vases to be placed at the entrances of the flats would cost $150, and that all these amounts should be considered a part of the consideration money, are conclusions of law by the pleader and are not admitted by the demurrer. *Johnson* v. *Roberts,* 102 Ill. 655; *Canal Commissioners* v. *Village of East Peoria,* 179 id. 214.

A vendor's lien, in general, is viewed with disfavor, having arisen in times whose peculiar conditions and institutions were alien to our own. It is from its nature secret and unknown to the world,—often productive of harm. (29 Am. & Eng. Ency. of Law,—2d ed.—737; 2 Warvelle

on Vendors,—2d ed.—par. 679.) This court has therefore frequently held that the rights under such a lien ought not to be enforced except where they are distinctly and clearly made out; that they should not be extended beyond the requirements of the settled principles of equity. (*Cowl* v. *Varnum,* 37 Ill. 181; *Boynton* v. *Champlin,* 42 id. 57; *Doolittle* v. *Jenkins,* 55 id. 400; *Lewis* v. *Shearer,* 189 id. 184.) The vendor's or grantor's lien is only permitted as security for unpaid purchase money, which must be a certain, ascertained amount. The lien does not exist in behalf of any contingent, uncertain or unliquidated demand. (3 Pomeroy's Eq. Jur.—2d ed.—par. 1251.) This doctrine has been quoted with approval in *Koch* v. *Roth,* 150 Ill. 212, as has also the rule laid down by Devlin on Deeds, (2d ed. sec. 1256,) that "the vendor cannot claim a lien for security for an uncertain demand." Perry on Trusts (5th ed. sec. 235,) holds that "no lien will arise  *  *  *  if the amount of the consideration is uncertain and unliquidated."

Under these authorities the claims for damages on account of unpaid rent and for decorating and heating, which were manifestly uncertain and unliquidated, cannot be enforced under a vendor's lien. While it is true that specific articles of personal property may be substituted for cash as a part of the purchase price, yet if they are not delivered, in order to have a vendor's lien for the amount they must in the contract have an agreed pecuniary value. (2 Jones on Liens,—2d ed.—sec. 1072; 2 Warvelle on Vendors,— 2d ed.—sec. 690; 29 Am. & Eng. Ency. of Law,—2d ed.— 744.) Such value was not fixed in the contract for the vases and cannot legally be inferred from the pleadings. It has been held that a vendor who has taken other lands with covenants of warranty of the vendee is deemed to have waived his lien, and that the acceptance of the deed of other lands in payment for a part of the purchase price is a waiver of the lien, although the title to such other lands appears to be bad. (2 Jones on Liens,—2d ed.—secs. 1086, 1088.)

This court has held that by taking a distinct and independent security for the purchase money the right to a vendor's lien will be waived. (*Chicago and Great Western Land Co.* v. *Peck*, 112 Ill. 408, and cases there cited.) We have also held that any act manifesting the vendor's intention not to rely upon his lien will operate as a waiver. (*Blomstrom* v. *Dux*, 175 Ill. 435.) This court does not appear ever to have had before it the question as to whether the taking of land in exchange will waive a vendor's lien. On principle it does not differ from the taking of other security on other property.

The misrepresentations as to the amount of rent that could be received from the flats or apartment buildings furnish no ground for equitable relief through the enforcement of a vendor's lien, but, as the Appellate Court said, "might, if proven, furnish at law a basis for damages in an action for deceit," or might justify an action to rescind the contract. But this is very different from the relief claimed here, where appellants evidently wish to retain the consideration already received, and, without rescinding the contract in any way, obtain damages for the property exchanged. The Supreme Court of Michigan, in discussing a similar question in *Graham* v. *Moffett*, 119 Mich. 303, held that such a ruling would "revolutionize the doctrine of rescission, which requires a party to rescind a fraudulent contract *in toto* or affirm it as made."

The amount for which a lien is here claimed as an unpaid portion of the purchase price for the lots is in every instance, according to the allegations of the pleadings, obviously uncertain and unliquidated. It may range anywhere from a few hundred dollars to many thousand dollars. Under no decisions in this State or any well considered authority in other jurisdictions would we be justified in enforcing a vendor's lien for such uncertain and indefinite claims.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*