In re Estate of Emanuel Levy, Deceased.
Marcus Weil, Administrator de bonis non of Estate of Emanuel Levy, Deceased, Appellant, v. Sarah Levy et al., Appellees.

Gen. No. 43,611.

Opinion filed October 26, 1948. Released for publication November 9, 1948.

BENJ. F. J. ODELL, of Chicago, for appellant.

ALBERT S. LONG, of Chicago, for appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Marcus Weil, Administrator *de bonis non* of the Estate of Emanuel Levy, deceased, appealed from an order of the Probate court of Cook county dismissing for want of equity a verified amended petition to sell real estate to pay debts. On June 8, 1948, the death of Marcus Weil was suggested and Louis Dulsky was substituted as administrator *de bonis non.*

It appears from the verified amended petition that Emanuel Levy died intestate May 24, 1916; that he left no personal property but was seized in fee simple of certain real estate (describing it) worth $80,000; that the total claims allowed against the estate were $20,429.34; that the deceased left him surviving Sarah Levy, his widow, since deceased, and his daughters Julia Levy Dry, Ruth Levy Ettelson and Katherine Levy Goldman, his only heirs at law and next of kin; that Sarah Levy, who died after her husband, left the said daughters as her heirs; that the daughters are all married, of legal age, and have an interest in the described real estate. Pius P. Flick was appointed administrator of the decedent's estate on June 22, 1927. On June 17, 1929, he filed a verified petition to sell real estate to pay debts, and on January 29, 1931, he filed an amended verified petition. Two of the heirs filed a second amended answer to the amended petition, in which they alleged, *inter alia,* that the proceedings to sell were instituted more than seven years after the death of the decedent and that the petitioner had made unreasonable delay in the institution of the proceedings, which delay was not and could not be reasonably or lawfully explained or excused by any facts alleged in the amended petition; that the petitioner had been guilty of *laches* in instituting and prosecuting the said proceedings, and was barred and estopped

from having the relief prayed in his said petition. When the cause came on for trial no evidence was heard, as the trial court was of the opinion that the defense of *laches* interposed in the second amended answer was a meritorious one and Katherine Levy Goldman, the nonresident heir, was allowed to file a demurrer to the amended petition with the understanding that the demurrer should set up the defense of *laches*. The said heir then filed a general and special demurrer to the amended petition, in which she alleged: "1. That it appears from the said Amended Petition that the petitioner herein has been guilty of gross laches in the filing of his said Amended Petition in that the said Amended Petition sets forth that the said Emanuel Levy died on May 24, 1916 and that the said Amended Petition was not filed herein until January 29, 1931; and that the said Amended Petition does not sufficiently explain or excuse the delay of the said petitioner in filing the said Amended Petition."

The trial court dismissed the petition upon the ground that the administrator *de bonis non* was barred from the relief asked in the amended petition because said petition was filed more than seven years after the death of the decedent and that the delay in the filing was unreasonable and was not excused by any facts alleged in the petition.

In our original opinion we held that the trial court erred in holding that a petition to sell real estate to pay debts filed more than seven years after the death of the intestate was barred unless the delay was satisfactorily explained, and erred in sustaining the defense of *laches* interposed and in entering the decretal order from which the administrator *de bonis non* appealed.

Respondents filed a petition for rehearing, which was granted.

Upon a reexamination of the cases bearing upon the question involved we have reached the conclusion that we erred in our ruling and judgment.

The origin of the seven-year doctrine dates from *McCoy v. Morrow,* 18 Ill. 519, where a delay of approximately twenty-six years had elapsed since the decedent's death before application was made for the granting of a petition to sell real estate to pay debts. The court said (pp. 523, 524, 525, 526):

"Creditors have a lien in this state against the estate of their deceased debtors for satisfaction of their debts, and which they may enforce, through administration, even against purchasers from heirs or devisees. *Vansyckle v. Richardson,* 13 Ill. 171. And there is no statute interposing any limitation of time within which the lien must be enforced. The questions then are, will delay and *laches* of the creditor destroy his lien and right to pursue the land of which his debtor died seized, in the hands of the grantee of the heir holding under conveyance duly recorded; and, if so, in what period of time?

"The motion that this lien is perpetual, and may be enforced at any time against land, after alienation by the heir, is wholly inadmissible. Such a rule would render titles to land insecure to a vast extent; and no man who holds lands derived through heirs or devisees, after having exhausted all the means the law affords for the ascertainment of the validity of his title, and the existence of liens and incumbrances against the lands, could be reasonably certain that he would not, after the lapse of years, be stripped of his title through such a secret lien, without actual notice or means of defense. At any period his lands might be demanded and finally wrested from him or his heirs by force of a conveyance under judicial order and sale, obtained without notice in fact, and founded on an apparent debt against some unknown person, for years in the grave, through whom his title had passed, and which debt had been hunted or trumped up for that special purpose. . . .

"There are few greater public misfortunes than insecurity of titles to landed property. It paralyzes

industry and destroys that incentive to labor and enterprise which a reasonable certainty of just reward alone will create, and upon which depends the public and private prosperity.

"...

"The creditor, under our law, has ample means of, without delay, compelling administration, and, through administration, subjecting the debtor's estate, real and personal, to the payment of the debts against the estate. If he fails to do so within a reasonable time, he will be held to have waived his lien against property descended, and the grantee of the heir will take the title discharged of the lien. It is not necessary in this case to decide what shall be a reasonable period of time for that purpose; for here the delay is so great as to leave no room, either from adjudged cases or the analogies of our law, for question. It seems to me that that certainty in the law so necessary to enable the citizen to know his rights of property—by analogy to the lien of judgments and the limitations of entry upon and action for the recovery of lands—requires the application to this case of the fixed period of seven years from the death of the ancestor.''

In *Unknown Heirs, Etc. v. Baker,* 23 Ill. 430, the court followed *McCoy v. Morrow, supra.*

In *Rosenthal, Admr., Etc. v. Renick,* 44 Ill. 202, the court said (p. 205):

"... If the real estate in Illinois, of which Andrew Huston died seized had been aliened by his devisee for a valuable consideration before the filing of this petition, or even if money had been expended by the devisee himself in improving such real estate, *we, should have no hesitation in saying, that the lapse of more than seven years between the death of Andrew Huston and the filing of this petition, would be a sufficient reason for denying its prayer.''* (Italics ours.)

In *Reed v. Colby,* 89 Ill. 104, the period of seven years from the death of the intestate was definitely

"adopted" as the rule. There the court stated (p. 107):

". . . As is held by this court, the creditor, under our law, has ample means, through administration, of subjecting the debtor's estate to the payment of the debts against the estate, and a creditor will be considered to have waived his lien upon property descended if he does not pursue his remedy in a reasonable time, and although there is no express statute of limitation of the time within which such a lien must be enforced, that where the delay of the creditors is unexplained, *the period of seven years from the death of the intestate may be properly adopted, by analogy to the lien of judgments and the limitations for entry upon, and recovery of lands, as a bar to such liens. McCoy v. Morrow, 18 Ill. 519; Unknown Heirs of Langworthy v. Baker, 23 id. 430; Rosenthal v. Renick, 44 id. 202; Moore v. Ellsworth, 51 id. 308,* and other cases." (Italics ours.)

In *Shuld v. Wilson,* 225 Ill. 336, the court states (p. 341): ". . . *the period of seven years from the death of the party* is adopted, by analogy to the lien of judgments, as a bar to the enforcement of the lien. (*Reed v. Colby,* 89 Ill. 104; *McKean v. Vick,* 108 id. 373.)" (Italics ours. See, also, *Goodrum v. Mitchell,* 236 Ill. 183, 186.)

Our ruling in the original opinion was based upon the erroneous assumption that *McKean v. Vick,* 108 Ill. 373, supported the contention of petitioner that the seven-year period must be computed from the date of the granting of letters of administration. A re-examination of the *McKean* case satisfies us that it does not support petitioner's contention. The following language in the opinion in that case (p. 376) is the basis for petitioner's contention:

"The letters of administration were granted on the 16th of May, 1870, and the petition was not filed in the county court until the 26th of January, 1883,—a period

of almost thirteen years. It may be regarded the settled doctrine of this court, that where it is not satisfactorily explained, delay for seven years after the grant of letters of administration in presenting a petition of this character, is such *laches* as will bar any relief under it. (*Rosenthal, Admr. v. Renick et al.*, 44 Ill. 202; *Moore et al. v. Ellsworth et al.*, 51 id. 308; *Bishop et al. v. O'Conner et al.*, 69 id. 431; *Furlong, Admx. v. Riley et al.*, 103 id. 628.)''

When *McKean v. Vick* came before the Supreme court for decision the rule stated in *Reed v. Colby, supra,* was undoubtedly the established law of this State. As stated in *McCoy v. Morrow, supra* (p. 525): ''. . . the policy of our law is repose and security of titles and estates against dormant claims,'' and it was to enforce that policy that the fixed period of seven years from the death of the ancestor was adopted. If the Supreme court intended in the *McKean* case to change the established rule and to hold that the petition must be filed within seven years after the grant of letters of administration, such a ruling would be so contrary to the established rule and its purpose that the great judge who wrote the opinion in that case would have stated in unmistakable language the change in the established rule. There is no suggestion in the opinion of a change or modification in the established rule. Where the opinion speaks of the ''settled doctrine of this court'' it refers, of course, to the rule adopted in *Reed v. Colby, supra, and the four cases cited in the opinion all followed that rule.* In *Shuld v. Wilson, supra,* the court followed the rule adopted in the *Reed* case, *and cited the McKean case in support of that rule.* We are satisfied that the *McKean* case did not change or modify the rule established in the *Reed* case. All that the court held in the *McKean* case was that as the petition was filed seven years after the grant of letters of administration *it was therefore barred by the* ''*settled doc-*

*trine of this court"* if the delay was not satisfactorily explained. There is no merit in petitioner's claim that *In re Estate of Neff*, 389 Ill. 625, sustains his position that the seven-year period dates from the granting of letters of administration. In that case Neff, Sr., died on April 2, 1929, and it was not until February 21, 1942, that the petition to sell real estate was filed. The opinion shows that all of the parties agreed that the relief sought in the petition was barred unless the delay was satisfactorily explained, and the court states that the sole question to decide was whether there were sufficient facts and circumstances to excuse the delay, and the question was answered in the negative. Petitioner cites *Baker v. Devlin*, 386 Ill. 441, as referring "to a seven year period from the date of letters." Counsel inadvertently misquotes the language of the court, which is as follows (pp. 444, 445) : "Under the former act it was held that such a petition might be barred by *laches* and the court adopted seven years as a reasonable time within which such an application might be made. (*Graham v. Brock*, 212 Ill. 579.)" The rule established in *Reed v. Colby, supra,* has never been changed or modified, and it is still the law.

Petitioner contends that even if the law is that a delay of more than seven years after the death of the decedent, if unexplained, will bar a petition to sell real estate, still, petitioner set up a reasonable excuse for the delay and therefore the petition is not barred by *laches*. The argument that there was a reasonable excuse for the delay in filing the petition is without the slightest merit. The original petition to sell real estate makes no excuse for the delay in filing the petition and it was drafted upon the theory that the seven-year period dated from the granting of letters of administration. It is clear, therefore, that the delay was due to a mistake of law. The amended petition alleges that the delay in the filing of the peti-

tion was occasioned through no fault or negligence on the part of petitioner or claimants whose claims were proven in the estate. Although we have shown the real cause for the delay, we will consider certain contentions raised by petitioner. The first one is, that ''where the heirs, as in this case, create and cause the delays they should not and cannot be charged against the petitioner or creditors''; that respondents were responsible for the protracted litigation, and therefore caused the delay. There is no merit in this contention. The history of the litigation between the parties, that commenced in 1916, is stated by Mr. Justice SULLIVAN in *Fleisher v. Flick,* 334 Ill. App. 461, and need not be repeated here. Respondents did not commence the protracted litigation, and they certainly had the right to protect fully their interest in the real estate in question. The fact that they prevailed in the various suits completely answers the claim of petitioner that the heirs were actuated by a desire to vex and impede petitioner in his effort to bring about a sale of the property to pay debts. Petitioner then takes an entirely different position, and argues that ''the failure, in the case at bar, to sooner administrate the estate *was due exclusively* to the difficulty in finding any estate''; that ''there had been no way to determine the value of the equity over and above the mortgages or whether there was any equity at all to sell''; that the Probate court ''would not approve any sale of realty where it could not be determined that the sale would bring something into the estate for the payment of debts.'' We are unable to see how this argument tends to excuse the failure of petitioner to file the petition in apt time. The petition to sell real esate to pay debts was not filed until June 17, 1929. The amended petition was filed January 29, 1931. On March 7, 1938, the trial court allowed a motion of petitioner that the hearing on the amended petition be continued generally, and the petition was allowed to lie dormant until January 29, 1945, when

it was, on motion of petitioner, set for hearing. On
that date Emanuel Levy had been deceased for nearly
twenty-nine years. The motion of petitioner to con-
tinue the cause generally "was due exclusively to the
difficulty in finding any estate," and this action of
petitioner amounted, in fact, to an abandonment of
the petition, and it was so understood by respondents.
The real reason why petitioner attempted to resurrect
the petition is made clear by certain court proceedings.
(See *Fleisher v. Flick, supra,* p. 471.) By court order
the Levy heirs and their mother, Sarah Levy, took
possession of the real estate, and all of the tenants
attorned to them. On July 19, 1924, a decree was
entered allowing the Levy heirs to redeem from the
second mortgage, and the heirs did redeem from that
mortgage by using the rents collected. We held in
the *Fleisher v. Flick* case that the heirs were entitled
to the rents they had collected. The redemption from
the second mortgage increased the value of the equity
in the building, and hence the effort of petitioner to
revitalize the amended petition to sell. If petitioner
had filed his petition within the time allowed by the
established rule and had then made a motion that the
hearing on the petition be continued, there might be
some force in his contention that he was justified in
delaying the actual sale of the property. But the
allegation in the amended petition to sell that the de-
lay in the filing of the petition was occasioned through
no fault or negligence on the part of petitioner or
claimants whose claims were proven in the estate, is
disproved by the facts.

We have considered several other contentions
raised by petitioner in support of his claim that he was
excused from filing the petition in the time required
by the established rule and find no merit in them. Nor
do we find any merit in several contentions of peti-
tioner that relate to matters of procedure.

Petitioner concludes his brief by stating that he
represents claimants who are third and fourth mort-

gage note holders on the property; that they supplied the material and labor in the erection of the building; that the third and fourth mortgage notes were issued to them in consideration of the material and labor they had furnished; that they have struggled through many years to be paid the wage of their hire; that petitioner believes that it would be a most flagrant miscarriage of justice to enable the heirs to defeat the payment of their father's debts because of delays that they themselves occasioned, and petitioner asks that we reverse the trial court and remand the cause with directions that the property be sold to pay debts. We doubt if this plea would have been made, or this appeal taken, if our recent opinion in *Fleisher v. Flick, supra,* had been filed prior to the time the appeal was taken. In that case we held (p. 474) that the lien rights of the third and fourth mortgagees were not extinguished by the decree of foreclosure under the second mortgage, and the Supreme court denied an appeal in that case.

We hold that the contention of petitioner, that his failure to file the petition within the time required by the established rule was not barred by *laches* because he had a reasonable excuse for not filing the petition within the required time, is without merit. In this connection we deem it pertinent to again refer to a statement in *McCoy v. Morrow, supra* (p. 525) that "the policy of our law is repose and security of titles and estates against *dormant* claims." It was to enforce that policy that the fixed period of seven years from the death of the decedent was adopted. The instant case, in our judgment, presents an aggravated case of a dormant claim.

The decretal order of the Probate court of Cook county entered June 14, 1945, is affirmed.

*Decretal order entered June 14, 1945, affirmed.*

SULLIVAN, P. J., and FRIEND, J., concur.