Arthur James Mills, Virginia Marsh Gerace, Robert Mills Marsh, and Betty Jane Marsh, Plaintiffs-Appellants, v. Ethel Marie Mills, Florence Mills Tripp, and Cosmopolitan National Bank of Chicago, a Corporation, Defendants-Appellees.

Gen. No. 11,331.

Second District, Second Division.

September 17, 1960.

John A. Cook, of Chicago, and Krusemark and Bertani, of Joliet, for appellants.

Dunn, Stefanich, and McGarry, of Joliet, for appellees.

WRIGHT, J.

This action is one to enforce a vendor's lien against a farm in Will County, Illinois, conveyed by Thomas O. Mills and Annie E. Mills to their son, Oscar L. Mills, on May 7, 1929. On the same date, the son signed a promissory note for the sum of $13,109.46 payable on demand to the order of Thomas O. Mills and Annie E. Mills, or survivor of either at California Bank, National City Branch, Los Angeles, California, with interest at the rate of seven percent per annum. The complaint to establish a vendor's lien on the farm was filed in the Circuit Court of Will County on September 21, 1953. It is alleged that the promissory note given by the son to his parents was in payment of the balance due on the purchase price of the farm. The suit was filed twenty-four years and four months after the date and maturity of the note which was payable on demand.

The case was referred to a Master In Chancery who heard sworn testimony of various witnesses. The Master made detailed findings of fact and found that more than twenty years had elapsed since the maturity of the note and that there was a presumption that the amount due on the note had been paid and that the presumption of payment had not been rebutted by the plaintiffs. The Master, therefore, concluded that the complaint should be dismissed. The Master overruled objections of the plaintiffs to his report, the objections were allowed to stand as exceptions and the exceptions were denied by the Circuit Court. The Circuit Court entered a decree in accordance with the conclusions of the Master In Chancery; found the equities with the defendants and dismissed the complaint of the plaintiffs for want of equity. From this decree plaintiffs appeal.

The appellants contend that the note was given for the equity of the parents in the farm and since there

are no intervening interests the farm is subject to a vendor's lien for the payment of the note. Appellants also urge that the presumption of payment was rebutted by the evidence and that the action on the note was not barred by the Statute of Limitations.

The appellees' theory of this case is as follows: (1) The presumption of payment arose from the elapse of twenty-four years and four months between the due date of the obligation and the time of filing the action and that there was practically no evidence to rebut the presumption of payment. (2) That the refusal of the court to declare a vendor's lien on the property was within its discretion and is supported by the evidence. (3) That any right which plaintiffs might have had to a vendor's lien was lost by the long delay and inaction of the plaintiffs and their predecessors in interest. (4) That the enforcement of the claim asserted by plaintiffs is barred by the Statute of Limitations.

Thomas Mills and Annie E. Mills, prior to May 7, 1929, were the owners of a farm consisting of about 281 acres situated in the Town of Channahon, Will County, Illinois. Sometime prior to that date they had given an option to purchase this farm to their son, Oscar L. Mills, which option ran to July 1, 1929, for a purchase price of $100.00 per acre payable in cash. The option indicates that it was deposited with Orlando R. Marsh, a son-in-law of the sellers and a brother-in-law of the buyer. It further indicates that if the option was not exercised, that the agreement was to be returned by Orlando R. Marsh to the sellers for cancellation. Thomas Oscar Mills and Annie E. Mills at the time of the execution of the option were living with their daughter and son-in-law, Erma and Orlando R. Marsh, in Wilmette, Illinois, and Oscar L. Mills was residing in California. Thomas Mills and Annie E. Mills by Warranty Deed dated May 7, 1929, conveyed the farm in question to Oscar L. Mills. The deed

recited that the farm consisted of 281.3 acres, which was conveyed for a consideration of $100.00 and other valuable consideration, subject to a trust deed in the amount of $14,000 dated February 7, 1923. Oscar L. Mills took possession of the farm thereafter and continued in possession through himself or tenants until the date of his death in Los Angeles, California, in June, 1947. After the death of Oscar L. Mills, his widow, Ethel Marie Mills, and his daughter, Florence Mills Tripp, who became owners of the farm as his heirs continued in possession of the farm until April 28, 1955, when they conveyed it to the defendant, Cosmopolitan National Bank of Chicago, Trustee under a trust agreement dated April 28, 1955.

Thomas Mills and Annie E. Mills were the parents of three children, namely Oscar L. Mills, Arthur J. Mills and Erma A. Marsh, who was married to Orlando A. Marsh. Thomas Mills died in June, 1932 leaving surviving his widow, Annie E. Mills, and his three children, Oscar L. Mills, Arthur J. Mills and Erma A. Marsh. In 1934 Erma A. Marsh died leaving surviving, her husband, Orlando A. Marsh, and three children, Virginia Marsh, Betty Jane Marsh, and Robert Mills Marsh. Annie E. Mills died in Wilmette, Illinois, in 1938 leaving surviving as her heirs at law, Arthur J. Mills, Oscar L. Mills, her sons, and Virginia Marsh, Betty Jane Marsh and Robert Mills Marsh, her grandchildren. Orlando Marsh, Erma's husband, died in 1938 leaving him surviving the above named three children. Oscar L. Mills died in June, 1947, in Los Angeles, California, leaving surviving Ethel Marie Mills, his widow, and Florence Mills Tripp, his daughter, both defendants in this case.

At the time of the execution of the deed to the farm both Oscar L. Mills and Arthur J. Mills were residents of the State of California and Oscar L. Mills continued to be a resident of the State of California until

54

the time of his death. Arthur J. Mills never returned to live in Illinois and is now a resident of the State of California. At the time of the execution of the deed the grantors were residing with their daughter and son-in-law, Erma and Orlando Marsh, in Wilmette, Illinois. Prior to the death of Thomas Mills, he and his wife had some financial means, but there was no evidence as to their exact worth. After the death of Thomas Mills, his estate was probated in Will County, Illinois, and the inventory filed therein discloses that his estate consisted solely of a $500.00 United States Liberty Bond. After his death Annie Mills, his widow, continued to reside with her daughter and son-in-law until the death of her daughter, Erma, in April, 1934. After her daughter's death, Annie Mills continued to reside with her son-in-law, Orlando Marsh, until he became ill and he and his family were unable to care for her as she was advanced in years and in ill health and needed nursing services. Annie Mills was taken to a nursing home about 1936 where she remained until her death in 1938.

During the time that Thomas O. Mills and Annie E. Mills resided at Orlando Marsh's home, their daughter, Erma, managed their financial affairs and saw to their personal needs, Thomas O. Mills then being about 79 years of age and Annie E. Mills being about 77 years of age. After the death of Erma Marsh, Orlando Marsh continued to care for and look after the needs of his mother-in-law, Annie E. Mills, and during all of this time the parents were visited on several occasions by their sons, Arthur and Oscar.

Upon the death of Orlando Marsh, his three children, Virginia Marsh, Betty Jane Marsh and Robert Marsh, following the suggestion of their uncle, Oscar L. Mills, moved from their home in Wilmette, Illinois, to the home of Oscar L. Mills in California. When they moved, Virginia Marsh, who was later married to

Joseph Gerace, took with her a metal strong box which had been the property of Thomas and Annie Mills and which had been kept by them in their room in the Marsh home. The room and box were accessible to both Erma and Orlando Marsh. Virginia Marsh casually examined the contents of the strong box about 1938 and when she came to California she mentioned this fact to Oscar L. Mills, who showed no interest in examining the contents of the box. Some two months later, Virginia and her brother and sister moved from the Oscar L. Mills home to an apartment of their own in the same city and until the time of Oscar L. Mills' death in 1947 saw him on several occasions. In 1952 their uncle, Arthur Mills, visited them and Virginia again mentioned the metal strong box to him and at that time they examined the contents of the box and among miscellaneous papers of the family, consisting of old letters, photographs and other papers, found the option agreement for the purchase of the farm and also found the promissory note payment of which is in dispute.

At no time from the date of the note until the date of its discovery in the metal strong box in 1952 did Arthur Mills, Virginia Marsh or any of the other plaintiffs have knowledge of the existence of the note. They never received any information from any member of the family of its existence or that there was any money owing by Oscar L. Mills for the purchase of the farm. At no time had the note ever been mentioned to either Arthur Mills or Virginia Marsh by Arthur's parents, Thomas and Annie Mills or by Virginia's parents, Erma and Orlando Marsh. The metal strong box was located in a room of the Marsh home and accessible by key in a dresser drawer to Thomas Mills and Annie E. Mills and also to Erma Marsh and Orlando Marsh during their lifetime. In California it remained in a trunk brought by Virginia Marsh from

the Marsh home which was in storage for a time and then located in her apartment and which was in her care and custody all of the time from the date of its removal from Wilmette until the note was discovered.

On the date of the note, Oscar L. Mills was in comfortable financial circumstances. After the death of his father and of his sister, Erma Marsh, there was considerable correspondence between Orlando Marsh and Oscar L. Mills pertaining to the care and financial assistance to be given to Oscar's mother, Annie Mills, who was in financial need. The correspondence covered the period of 1934 to 1936 in which latter year Annie Mills was removed to a nursing home. The correspondence mentions the financial difficulties of the mother and also of Orlando Marsh and refers to the tightening up of Oscar L. Mills' financial affairs. The letters contain numerous requests by Orlando Marsh to Oscar L. Mills for monies to be used for the care of the mother, Annie Mills, and refer to payments forwarded by Oscar L. Mills for that purpose. These letters refer to trips by Orlando Marsh to the farm in question and reports by him to Oscar L. Mills on its occupancy by the tenant. At no time in any of the correspondence between the two is the note in question or demand for payment of the same mentioned.

■ ■ A vendor's lien does not grow out of an agreement between the parties, but is simply an equity raised by courts of chancery for the benefit of vendors of realty, which will be enforced or denied as the exigencies of each particular case may require, and rests on the principle of natural justice that one obtaining possession of another's estate ought not in conscience to be allowed to keep it without paying the consideration. Wright v. Buchanan, 287 Ill. 468, 123 N. E. 53. A vendor's lien is not recognized by our statute, but is a creature of the courts of equity, Blomstrom v. Dux, 175 Ill. 435, 51 N. E. 755, and such liens

are created to prevent injustice which can arise when one parts with an interest in land and the purchaser retains the realty but refuses to pay. Pruitt Office Machines, Inc. v. Liberty Nat. Bank of Chicago, 341 Ill. App. 146, 93 N.E.2d 104. A vendor's lien is viewed with disfavor and will not be enforced unless clearly established, and will only be permitted as security for unpaid purchase money. Ross v. Clark, 225 Ill. 326, 80 N. E. 275.

■ The law raises a presumption of payment, in the absence of explanatory evidence, where a note which has been due and unpaid without recognition or payment of interest for twenty years but such a presumption of payment is rebuttable. 28 I. L. P., Negotiable Instruments, Sec. 276. One of the leading cases in Illinois upon this subject is Fagan v. Bach, 253 Ill. 588, 97 N. E. 1087, wherein it was stated:

"That the law presumes a debt which has been due and unclaimed and without recognition for twenty years to have been paid is unquestioned. In McCoy v. Morrow, 18 Ill. 519, it was said, on page 524: 'After the lapse of twenty years, debts, of whatever degree, are presumed to have been satisfied, and this presumption will defeat a recovery on them unless rebutted by proof.' And in McCormick v. Evans, 33 Ill. 327, it was held that where money has been due, under a contract for the purchase of land, for more than twenty years the law presumes its payment; and this statement of the law was recognized as correct in Chicago & Northwestern Railway Co. v. Galt, 133 Ill. 657. (See, also, Alston v. Hawkins, 105 N. C. 3.) In a note to this case where it has been reported in 18 Am. St. Rep. 875, the editor states: 'Independently of the Statute of Limitations, the law raises a presumption, in the absence of explanatory evidence, that a debt which has been due and un-

58

claimed and without recognition or payment of interest for twenty years has been paid',—which statement, we believe, is a fair statement of the law and one that is supported by the great weight of authority in England and in this country."

The principle questions presented is the quantum of evidence required to rebut the presumption of payment after the lapse of twenty years or more and whether or not the evidence in this case was sufficient to rebut this presumption. There are very few cases in Illinois which discuss the quantum of evidence required except by the way of dictum. In Katt v. Chapman, 248 Ill. App. 12, 22, it was stated that clear and explicit proof is necessary to dislodge the presumption of payment. In Fagan v. Bach, supra, it was stated that the presumption may be rebutted by proof but does not state or discuss the degree of proof required. The Fagan case, supra, does state that where the vendor remains in possession of the land the presumption may be easily rebutted but where the vendee remains in possession of the land for the length of time that intervenes between the date when the debt fell due and the date of filing suit, the presumption of payment ought to be held to be almost conclusive. In McCoy v. Morrow, 18 Ill. 519, it was announced that after the lapse of twenty years, debts of whatever degree, are presumed to have been satisfied, and this presumption will defeat a recovery on them unless rebutted by proof.

■ We are of the opinion that in order to rebut the presumption of payment of a note more than twenty years after maturity, the evidence to rebut the presumption must be clear and convincing. This would be similar to the test advocated in Katt v. Chapman, supra, that such evidence must be clear and explicit to dislodge the presumption of payment. After the lapse of twenty years there is a strong presumption

that the note has been paid and such presumption cannot be rebutted by speculative or conjectural evidence.

Applying the test that the evidence to rebut the presumption of payment must be clear and convincing, we cannot say that the Master In Chancery and the Chancellor were in error in their findings and conclusions that the evidence failed to rebut the presumption of payment of the note which was outstanding for twenty-four years and four months prior to the filing of the complaint. The record is silent as to any request for payment from Thomas O. Mills, one of the payees of the note, who died in 1932, or from Annie E. Mills, the other payee, who lived until 1938, or from Erma Marsh or Orlando Marsh, who took care of their business affairs during the latter years of their lives.

As stated in Fagan v. Bach, supra, continued possession of the farm by Oscar L. Mills, his tenants and his successors in interest from the date of the sale adds further weight to the presumption of payment. Virginia Marsh Gerace lived with her parents during all of the period of 1929 to 1938 and according to her testimony knew of their circumstances, but she stated that she heard nothing of any obligation owing by Oscar L. Mills. Orlando R. Marsh and Oscar L. Mills corresponded quite frequently and there was admitted in evidence some thirty-nine letters written from 1934 to 1936 between the two of them and in all of this correspondence there is no mention of any obligation owing by Oscar L. Mills.

Appellants' theory is that the presumption of payment was rebutted by a variety of evidence which explains why the note was so long outstanding without enforcement. One of the many arguments made by the appellants is that prior to the sale of the farm, the sellers were "well to do" and at the time of their death were in poor financial condition. This, of course, is only speculative evidence that the note was not paid and is not the clear and convincing type of evidence

required to rebut payment. Another of the many points relied upon by the appellants is that the note was found in the personal papers and strong box which belonged to the sellers and argues had the note been paid it would no longer be in the possession of the sellers. This again is a matter of speculation and could have resulted from poor business practices upon the part of the buyer. The Master In Chancery was in a position to see, hear and observe the witnesses testify and his conclusions of fact and the decree of the Circuit Court approving the Masters' findings and conclusions are amply supported by the record and it cannot be said that the decree of the Circuit Court is against the manifest weight of the evidence. Appellants strenuously contend and ably argue that the note has not been paid and that the presumption of payment has been rebutted, but this contention is not supported by the evidence in the record before us. The evidence is not so clear and convincing as to rebut the presumption of payment after the lapse of twenty-four years and four months from maturity of the note at the time and the commencement of this suit.

We conclude that the presumption of payment herein arose from the lapse of twenty-four years and four months between the due date of the obligation and the time of filing the complaint and that this presumption has not been rebutted by clear and convincing evidence and that the decree of the Circuit Court is amply supported by the record. The appellants have made other contentions but we deem it unnecessary to discuss them. Anderson v. City of Rolling Meadows, 10 Ill.2d 54, 139 N.E.2d 199.

For the reasons herein stated, the decree of the Circuit Court of Will County, Illinois, is affirmed.

Decree affirmed.

CROW, P. J. and SPIVEY, J., concur.